CITY OF RENO, APPELLANT, *v.* BUILDING & CONSTRUCTION TRADES COUNCIL OF NORTHERN NEVADA; INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 401; PAINTERS AND ALLIED TRADES, LOCAL 567; AND SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL 26, RESPONDENTS.

No. 54569

March 31, 2011                                        251 P.3d 718

*John J. Kadlic*, City Attorney, and *Jonathan D. Shipman*, Deputy City Attorney, Reno, for Appellant.

*Michael E. Langton*, Reno, for Respondents.

Before the Court EN BANC.

## OPINION

By the Court, GIBBONS, J.:

Respondents Building & Construction Trades Council of Northern Nevada; Painters and Allied Trades, Local 567; International Brotherhood of Electrical Workers, Local 401; and Sheet Metal Workers International Association, Local 26 (collectively, the unions), representing workers on the construction of a retail store in Reno, filed complaints with the Labor Commissioner alleging that their workers did not receive prevailing wages on that project. Two of those unions[1] further alleged that appellant City of Reno had failed to fulfill its duty to investigate whether workers were receiving prevailing wages, a duty the unions contend the City had because the project was set to receive public financing in the form of sales tax anticipation revenue (STAR) bond funds.

The Labor Commissioner conducted a hearing and concluded that the City did not have a duty to investigate the prevailing wage claims, and that he lacked jurisdiction to hear the particular prevailing wage claims at issue. After the unions petitioned the district court for judicial review, the district court granted the petition and remanded the case to the Labor Commissioner, concluding that the City had a duty to investigate the prevailing wage discrepancies under NRS 338.070 and that the Labor Commissioner had jurisdiction to consider the claims.

We first consider whether the City had a duty to investigate the prevailing wage discrepancies. While the district court concluded that the City had a statutory duty to investigate, we conclude that the City had a contractual duty to investigate the prevailing wage discrepancies, and therefore, we do not consider the City's statutory duty. Second, we consider the effect on this case of our holding in *Carson-Tahoe Hospital v. Building & Construction Trades*, 122 Nev. 218, 128 P.3d 1065 (2006), which concerned applying the prevailing wage statutes to a different type of project. While *Carson-Tahoe* dealt with a related issue, because the projects involved in the two cases were financed by differing statutory modes, the facts are distinguishable. Lastly, we consider the City's remaining argument and conclude that the Labor Commissioner has jurisdiction to ensure prevailing wages are paid on projects receiv-

---

[1]Building & Construction Trades Council of Northern Nevada and International Brotherhood of Electrical Workers, Local 401, specifically complained to the Labor Commissioner that the City of Reno failed to fulfill its duty to investigate the prevailing wage discrepancies.

ing STAR bond funds.[2] Thus, while we do not completely agree with the district court's reasoning for why the City had a duty to investigate the prevailing wage discrepancies, we nonetheless affirm its order.

## FACTS AND PROCEDURAL HISTORY

In 2005, the Nevada Legislature enacted the Tourism Improvement District Law, NRS Chapter 271A, which sets out the requirements for STAR bonds. 2005 Nev. Stat., ch. 477, §§ 8-14, at 2363-68. These bonds use sales taxes to help fund local improvement projects, such as privately owned tourism, retail, and entertainment-related projects. *Id.* §§ 6, 8, at 2362-63. These projects are meant to predominantly generate sales from out-of-state residents and can only be constructed in an area where there has been no retail business for a period of at least 120 days. *Id.* § 9, at 2363-66. Local governments fund these projects both through bonds and through reimbursement payments after the project is completed. *Id.* § 13, at 2367-68.

The first project commenced under this chapter was the construction in Reno of Cabela's, a retail store specializing in hunting, fishing, and outdoor gear. The City of Reno entered into a public financing agreement with Cabela's, in which the parties agreed that prevailing wages would be paid and that all prevailing wage laws would be followed. The financing agreement states that

> [Cabela's] is responsible for providing the City and the State Labor Commission with all information required by NRS 338.010 to NRS 338.090, and is otherwise responsible for all compliance requirements set forth in those provisions of NRS. [Cabela's] shall file with the City a quarterly report on

---

[2]The City also argues that the unions did not have standing to petition for judicial review. The unions had standing to petition for judicial review because they were recognized as parties of record during the Labor Commissioner's hearing and were aggrieved parties to a contested case because they were the complainants before the Labor Commissioner, and when the Labor Commissioner dismissed the complaints, all complainants became aggrieved. *See* NRS 233B.130(1). Further, the unions have a legal right to pursue the appropriate proceedings to ensure that prevailing wages are paid to the workers they represent. *See Webb v. Clark County School Dist.*, 125 Nev. 611, 617, 218 P.3d 1239, 1244 (2009) (noting that an aggrieved party means a party with a substantial grievance, including the denial ''of some equitable or legal right'' (internal quotations omitted)).

In response to the City's argument, the unions argue that because the City did not raise the issue of standing before the Labor Commissioner, it was barred from raising it in the district court, and thus, cannot raise it here. The City is challenging the union's standing to petition for judicial review, not the union's standing to bring complaints before the Labor Commissioner. The City properly preserved this issue for appeal.

the demography of the workers employed by any contractor or subcontractor . . . .

The City agreed to investigate alleged violations of the prevailing wage requirements:

With regard to alleged violations of federal and state laws and regulations filed with the Labor Commissioner no later than thirty (30) days after the Opening Date, the City has: (i) completed its investigations; (ii) determined whether a violation has been committed; and (iii) filed its findings with the appropriate regulatory authority or agency, if any.

The City was to complete its investigation within specific time frames and provide its findings to the Labor Commissioner.

The parties' agreement referred to NRS 338.010 to NRS 338.090, which provisions deal with publicly financed projects; specifically, NRS 338.020 to NRS 338.090 mandate the payment of prevailing wages on all projects funded through a contract with a public body.[3] Cabela's contracted with licensed Nevada contractors to provide labor, materials, equipment, and supplies for the project.

During the project's construction, the unions filed numerous complaints with the Labor Commissioner's office alleging that prevailing wages were not paid on the Cabela's project and that the City violated the provisions of NRS 338.020 to NRS 338.090, including NRS 338.070(1) (requiring a public body that has awarded a contract to investigate prevailing wage discrepancies), and thus, should be fined. The complaints were consolidated and then bifurcated to separate the alleged violations of the contractors from the alleged violations of the City. The parties agreed to bifurcate the proceedings against the City into two hearings: (1) a hearing to determine the threshold matter of whether the City had a duty to investigate the prevailing wage complaints; and (2) a hearing to consider the City's conduct, if it was determined in the first hearing that the City had a duty to investigate. After conducting a hearing, the Labor Commissioner concluded that the City did not have a statutory duty to investigate prevailing wage claims and, thus, no second hearing to consider the City's conduct was necessary. The Labor Commissioner also ultimately chose to address the claims against the contractors in his order regarding the claims against the City. In the order, he declined to address the merits of the claims

---

[3]The Labor Commissioner determines what the prevailing wage in each county is for a specific craft or type of work by annually surveying contractors who have performed that type of craft or work in that county. NRS 338.030. The prevailing wage laws are meant to ensure that a public body pays a laborer working on a public project no less than the prevailing wage they would receive for the same type of work done for a private employer in that county. NRS 338.020.

against the contractors because he determined that he did not have jurisdiction to consider them.

The unions filed a petition for judicial review. The district court granted the petition and held that the Labor Commissioner's decision was unreasonable because under NRS 338.070 the City had a duty to investigate the prevailing wage discrepancies on the Cabela's project. The district court also determined that the Labor Commissioner had jurisdiction to review the wage claims, and accordingly, the court reversed the Labor Commissioner's order and remanded the case to the Labor Commissioner for further proceedings. This appeal followed.

## DISCUSSION

### I. *The City had a contractual duty to investigate whether prevailing wages were being paid on the Cabela's project*

The City argues that it did not have a duty under NRS 338.070 to investigate whether prevailing wages were being paid on the Cabela's project. The district court concluded, however, that the City had a statutory duty to investigate prevailing wage discrepancies on the Cabela's project. We agree that the City had a duty to investigate, but we conclude this duty derived from the financing agreement between the City and Cabela's.

The standard for reviewing petitions for judicial review of administrative decisions is the same for this court as it is for the district court. *Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 498, 117 P.3d 193, 196 (2005). Like the district court, we decide "pure legal questions without deference to an agency determination." *Jones v. Rosner*, 102 Nev. 215, 217, 719 P.2d 805, 806 (1986). We do not give any deference to the district court decision when reviewing an order regarding a petition for judicial review. *Kay v. Nunez*, 122 Nev. 1100, 1105, 146 P.3d 801, 805 (2006).

Here, the City entered into the financing agreement with Cabela's that specifically stated prevailing wages would be paid and that NRS 338.010 through NRS 338.090 would be complied with. The financing agreement also required Cabela's to submit documentation to the City showing that prevailing wages were being paid and required the City to investigate Cabela's statutory compliance. Thus, by contract, the City undertook the responsibility to investigate prevailing wage discrepancies on the Cabela's project, even if it was not required to do so under NRS 338.070. The City conceded that it had this contractual duty during the hearing before the Labor Commissioner. Although we do not grant deference to the district court's decision, we affirm the district court's order in-

sofar as the court determined that such a duty existed and granted the petition for judicial review. *See Rosenstein v. Steele*, 103 Nev. 571, 575, 747 P.2d 230, 233 (1987) (stating that this court will affirm an order of the district court if it reached the correct result for reasons that differ from our own).

## II. *Carson-Tahoe is inapplicable*

The City contends that our analysis of the application of prevailing wage laws in *Carson-Tahoe Hospital v. Building & Construction Trades*, 122 Nev. 218, 128 P.3d 1065 (2006), bars a conclusion that its investigation and the payment of prevailing wages under NRS Chapter 338 were statutorily mandated here. We disagree.

In *Carson-Tahoe*, a private organization financed the construction of a new hospital on hospital-owned land through $95 million in economic development bonds sanctioned by the city board and issued pursuant to the County Economic Development Revenue Bond Law, NRS 244A.669 through NRS 244A.763. 122 Nev. at 219, 128 P.3d at 1066. The economic development revenue bonds at issue did not utilize public money because they did "not involve taxpayer money or obligate county funds." *Id.* at 221, 128 P.3d at 1067. Therefore, we concluded that payment of prevailing wages was not required because the contract did not involve a public body or a public work. *Id.* at 222, 128 P.3d at 1068.

The STAR bonds used for the Cabela's project are different from the economic development revenue bonds used for the project in *Carson-Tahoe* because they were created under different acts that have different provisions and requirements. Unlike economic development revenue bonds, STAR bonds are ultimately financed by taxpayers through sales taxes. The City concedes that Cabela's was a public project. Therefore, we conclude that *Carson-Tahoe* is inapplicable here.

## III. *The Labor Commissioner has jurisdiction under NRS Chapter 271A*

The district court concluded that the Labor Commissioner has jurisdiction to enforce prevailing wage laws with respect to all STAR bond-financed projects. Although the City contends that the district court misinterpreted the language in NRS 271A.130 that places STAR bond projects under the Labor Commissioner's purview, given our rejection of *Carson-Tahoe*'s application to this matter and our independent review of the statute, we disagree.

NRS 271A.130(3) specifically states that NRS 338.010 to NRS 338.090 apply to contracts and agreements for projects that are financed through STAR bonds: "The provisions of *NRS 338.010* to

*338.090*, inclusive, apply to any contract or other agreement for the construction, improvement, repair, demolition or reconstruction of any project that is paid for in whole or in part [through NRS Chapter 271A financing], regardless of whether the project is publicly or privately owned.'' (Emphases added.) NRS 338.020 requires that the prevailing wage must be paid to workers working on public projects. NRS 338.015 requires the Labor Commissioner to ''enforce the provisions of NRS 338.010 to 338.130, inclusive.''

We review a district court's interpretation of a statute de novo. *State, Dep't of Mtr. Vehicles v. Frangul*, 110 Nev. 46, 48, 867 P.2d 397, 398 (1994). When a statute uses words that have a definite and plain meaning, the words will retain that meaning unless it clearly appears that the Legislature did not intend such a meaning. *State v. State, Employees Assoc.*, 102 Nev. 287, 289, 720 P.2d 697, 699 (1986). ''No part of a statute should be rendered meaningless, and this court will not read statutory language in a manner that produces absurd or unreasonable results.'' *Carson-Tahoe*, 122 Nev. at 220, 128 P.3d at 1067.

The plain language of NRS 271A.130 incorporates NRS 338.010 to 338.090, which include provisions mandating the payment of prevailing wages on public projects and the enforcement of such mandates by the Labor Commissioner. A conclusion that the Labor Commissioner does not have jurisdiction to enforce prevailing wages on such projects would render NRS 271A.130 meaningless and produce an absurd and unreasonable result. Thus, we hold that the Labor Commissioner has jurisdiction to enforce this mandate.

Accordingly, we affirm the district court's order insofar as the court granted judicial review and remanded for further proceedings; those proceedings, however, should be conducted in a manner consistent with this opinion.

Douglas, C.J., and Cherry, Saitta, Pickering, Hardesty, and Parraguirre, JJ., concur.