131 Nev., Advance Opinion 87

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| VINCENT VALENTI,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA<br>DEPARTMENT OF MOTOR VEHICLES,<br>Respondent. | No. 63987<br><br>FILED<br><br>NOV 05 2015<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order denying a petition for judicial review of a Department of Motor Vehicles' decision to revoke a driver's license. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

*Reversed and remanded.*

Law Offices of John G. Watkins and John Glenn Watkins, Las Vegas, for Appellant.

Adam Paul Laxalt, Attorney General, William J. Geddes, Senior Deputy Attorney General, and Nathan L. Hastings, Deputy Attorney General, Carson City, for Respondent.

BEFORE PARRAGUIRRE, DOUGLAS and CHERRY, JJ.

*OPINION*

By the Court, DOUGLAS, J.:

In this appeal, we consider whether a chemist, as defined under NRS 50.320, must be qualified as an expert in a Nevada court of record prior to admission of his or her affidavit attesting to an individual's

blood-alcohol concentration in a driver's license revocation hearing. In doing so, we expand our decision in *Cramer v. State, DMV*, 126 Nev. 388, 240 P.3d 8 (2010), where we specifically declined to address this issue. We conclude that the expert qualification requirement in NRS 50.320(1) applies to all proposed expert witnesses, including chemists.

## BACKGROUND

On the morning of July 1, 2012, Nevada Highway Patrol Trooper Scott Reinmuth witnessed motorist Vincent Valenti make two lane changes without signaling. As a result, Trooper Reinmuth initiated a traffic stop. Upon making contact with Valenti, Trooper Reinmuth observed signs of intoxication and asked Valenti to complete several field sobriety tests. Valenti's test performances revealed impairment, so Trooper Reinmuth administered a preliminary breath test. The breath test indicated Valenti's blood-alcohol concentration was 0.154. Trooper Reinmuth then arrested Valenti for driving while under the influence of alcohol. Trooper Reinmuth also instructed Valenti that he would be required to submit to either a blood test or another breath test when they arrived at Clark County Detention Center. Upon arrival, Valenti submitted to a blood test.[1] Forensic scientist Christine Maloney conducted a blood analysis, which revealed a blood-alcohol concentration of 0.159.

Thereafter, the Department of Motor Vehicles notified Valenti in writing that his driver's license was being revoked. Valenti requested an administrative hearing to contest the revocation. At the hearing, the

---

[1]Valenti contests the constitutionality of the warrantless blood testing. We need not address this issue because we reverse the district court's decision based on the improperly admitted expert affidavit.

administrative law judge admitted Maloney's affidavit into evidence over Valenti's objection. In the affidavit, Maloney attested that she was a chemist, as defined by NRS 50.320(5), and that Valenti's blood-alcohol concentration was 0.159 at the time of testing. Maloney's affidavit did not, however, state whether she had been previously qualified as an expert in a Nevada court of record.

After the hearing, the administrative law judge concluded Valenti's blood-alcohol concentration was 0.08 or more at the time of the traffic stop.[2] The administrative law judge explained, pursuant to *Cramer*, 126 Nev. 388, 240 P.3d 8, that there are two classes of persons under NRS 50.320, "chemists" and "any other person," and a chemist is not required to qualify as an expert before his or her affidavit attesting to blood-alcohol concentration is admitted into evidence. Consequently, Maloney's affidavit, declaring that she was a chemist, was admissible. Based on Maloney's affidavit and testimony given by Trooper Reinmuth, the administrative law judge ruled that the DMV established the necessary elements of proof and revoked Valenti's driver's license.

Valenti then petitioned the district court for judicial review, arguing that the administrative law judge's decision was not supported by substantial evidence because Maloney's affidavit, which failed to state whether she had been court-qualified as an expert, was inadmissible. The district court denied Valenti's petition, concluding that Maloney's affidavit

---

[2]It is unlawful for any person who has a concentration of alcohol of 0.08 or more in his or her blood to drive or be in actual physical control of a vehicle. NRS 484C.110(1).

indicated she was a chemist and was therefore admissible. Valenti appeals the district court's decision.

## DISCUSSION

"On appeal from orders deciding petitions for judicial review, this court reviews the administrative decision in the same manner as the district court." *Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev., Adv. Op. 27, 327 P.3d 487, 489 (2014); *see Kay v. Nunez*, 122 Nev. 1100, 1105, 146 P.3d 801, 805 (2006) (affording "no deference to the district court's ruling in judicial review matters"). We review the administrative decision for an abuse of discretion, giving deference to the administrative agency's factual findings that are supported by substantial evidence. *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev., Adv. Op. 99, 314 P.3d 949, 951 (2013). We review questions of statutory interpretation de novo. *Id.*

If the results of a preliminary breath test or evidentiary blood test show that a motorist had "a concentration of alcohol of 0.08 or more in his or her blood or breath at the time of the test, the license, permit or privilege of the person to drive must be revoked." NRS 484C.210(1) (2013).[3] Motorists may then contest the revocation at a requested DMV administrative hearing. NRS 484C.230(1). The scope of the administrative hearing is limited to determining whether the motorist had a concentration of alcohol of 0.08 or more in his or her blood or breath at the time of the test. NRS 484C.230(2). In reaching that determination, the affidavit of "a chemist and any other person who has qualified in a

---

[3]Chapter 484C of NRS was amended by the 2015 Legislature. Upon review of the amendments, we conclude that they do not affect our analysis.

 

court of record in this State to testify as an expert witness regarding the presence . . . of alcohol" must be admitted. NRS 50.320(1) and (2).

On appeal, Valenti contends that NRS 50.320(1)'s expert qualification prerequisite applies to both "chemists" and "any other person." Hence, Valenti argues that Maloney's affidavit, which declared that she was a chemist but failed to address whether she had been court-qualified to testify as an alcohol-concentration expert, was inadmissible. In opposition, the State contends that NRS 50.320(1)'s expert qualification prerequisite does not apply to persons who are defined as chemists pursuant to NRS 50.320(5).[4] Thus, according to the State, a chemist's affidavit is admissible in an administrative proceeding, so long as his or her place of employment and job duties are of the kind defined by NRS 50.320(5). We disagree.

*The language of NRS 50.320(1) is ambiguous*

"In interpreting a statute, this court looks to the plain language of the statute and, if that language is clear, this court does not

---

[4]NRS 50.320(5) provides:

> As used in this section, "chemist" means any person employed in a medical laboratory, pathology laboratory, toxicology laboratory or forensic laboratory whose duties include, without limitation:
>
> (a) The analysis of the breath, blood or urine of a person to determine the presence or quantification of alcohol or a controlled substance, chemical, poison, organic solvent or another prohibited substance; or
>
> (b) Determining the identity or quantity of any controlled substance.

go beyond it." *Branch Banking & Tr. Co. v. Windhaven & Tollway, LLC*, 131 Nev., Adv. Op. 20, 347 P.3d 1038, 1040 (2015). "But when a statute is susceptible to more than one reasonable interpretation, it is ambiguous, and this court must resolve that ambiguity by looking to the statute's legislative history and construing the statute in a manner that conforms to reason and public policy." *Zohar v. Zbiegien*, 130 Nev., Adv. Op. 74, 334 P.3d 402, 405 (2014) (internal quotation omitted).

In pertinent part, NRS 50.320 provides:

> 1. The affidavit or declaration of a chemist and any other person who has qualified in a court of record in this State to testify as an expert witness regarding the presence in the breath, blood or urine of a person of alcohol . . . which is submitted to prove:
>
> . . .
>
> (b) The concentration of alcohol . . .
>
> is admissible in the manner provided in this section.
>
> 2. An affidavit or declaration which is submitted to prove any fact set forth in subsection 1 must be admitted into evidence when submitted during any administrative proceeding, preliminary hearing or hearing before a grand jury. The court shall not sustain any objection to the admission of such an affidavit or declaration.

Both Valenti and the State maintain that the language of NRS 50.320(1) is plain and that this court need not go beyond it to discern legislative intent. We, however, are unable to decipher legislative intent according to the plain language. Instead, we conclude that the language of NRS 50.320(1) can reasonably be read to offer different meanings.

In one possible reading, the affidavits of both chemists and other persons are admissible as evidence in an administrative proceeding

only if the affiant has been qualified previously as an expert in alcohol concentration in a Nevada court of record. In this reading, the Legislature's use of the conjunction "and" between "chemist" and "any other person" makes the modifier "who has qualified" apply to both "chemist" and "any other person." *Cf. Galloway v. Truesdell*, 83 Nev. 13, 26, 422 P.2d 237, 246 (1967) ("[T]he expression of one thing is the exclusion of another . . . ."). And the deliberate use of the conjunction "and" between the clauses means that the clauses are to be taken together. *See Black's Law Dictionary* 86 (6th ed. 1991) (defining "and" as "[a] conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first"). Taken together and applied to the subsequent modifier—"who has qualified in a court of record in this State"—both chemists and other persons must qualify.

In an alternative reading, "any other person" is subject to the expert qualification requirement, but a "chemist" is not. According to the last antecedent rule of statutory construction, the modifier "who has qualified" likely relates back only to the antecedent immediately preceding—"any other person." *See Thompsen v. Hancock*, 49 Nev. 336, 341, 245 P. 941, 942 (1926) ("It is a rule of construction that relative and qualifying words and phrases, grammatically and legally, where no contrary intention appears, refer solely to the last antecedent."). In such a reading, the chemist is not beholden to the modifier and is thus exempt from the requirement contained therein, a reading that contradicts the first. Because NRS 50.320(1) may be read to render meanings at odds with one another, its language is ambiguous.

*The Legislature has expressed no intent to release chemists from the established expert qualification requirement*

Given the ambiguity of NRS 50.320(1), we look to legislative history to discern the Legislature's intent. *See Zohar*, 130 Nev., Adv. Op. 74, 334 P.3d at 405. The State suggests that by amending NRS 50.320 to add a definition of "chemist," *see* subsection 5, the 2009 Legislature intended that chemists be unbound from the expert qualification requirement. The expert qualification requirement at issue was codified at NRS 50.315 (1993) prior to its relocation to NRS 50.320. Under NRS 50.315 (1993), a "person" was required to qualify as an expert before his or her affidavit was admissible. Not until 1995 was a "chemist" additionally named as an individual whose expert affidavit must be admitted.[5] 1995 Nev. Stat., ch. 708, §§ 1-2, at 2712-13. At that juncture, the Legislature espoused no intent to treat chemists differently,[6] nor was any intent to treat chemists differently espoused when the 2009 Legislature added a definition to the term chemist.[7] *See generally, e.g.*, Hearing on A.B. 250 Before the Assembly Judiciary Comm., 75th Leg. (Nev., March 16, 2009).

---

[5]As we conclude here, the requirement that a chemist first be court-qualified has endured since NRS 50.320's inception in 1995.

[6]The focus of the hearings on Senate Bill 157, which added the term chemist, concerned Confrontation Clause issues in the affected criminal proceedings. The Legislature gave no discussion as to why the term chemist was added. *See generally, e.g.*, Hearing on S.B. 157 Before the Senate Judiciary Comm., 68th Leg. (Nev., February 13, 1995).

[7]Through Assembly Bill 250, the 2009 Legislature also amended NRS 50.320 to change the court wherein an expert could meet the qualification prerequisite from "the district court of any county" to "a court of record in this State." 2009 Nev. Stat., ch. 16, § 1, at 32.

The most informative statement as to the Legislature's intent in defining chemist came from a lead proponent of Assembly Bill 250, Deputy District Attorney L.J. O'Neale. O'Neale testified: "This is just a clarification that, for th[o]se people that everybody calls chemists, the law will call them chemists as well."[8] *Id.* Missing from O'Neal's statement, and indeed, more revealing, from the relevant legislative history altogether, is intent to do anything other than to define chemist. Therefore, we conclude, absent any expression of intent by the 2009 Legislature to, by defining the

---

[8]In context, O'Neale stated:

> The section of the bill that defines the term "chemist" is becoming significant because, as persons go to greater and greater extremes in the defense of cases, we have seen a couple of instances where defense counsel say, well, your chemist is not really a chemist because his or her job title is not chemist. In fact, none of the people who do this work have a job title of chemist. Metro forensic lab people are forensic scientists. They used to be called criminalists, and this was changed a couple of years ago. The people who do the analysis for Quest Laboratories, which does the Highway Patrol cases, are termed forensic technicians. So their job titles do not say chemist. Chemist is perhaps on the lowest level as a term of art because people say, "Do you have your chemist available? Is your chemist ready to go?" So these people are always referred to as chemists even though their job titles are not chemist. *This is just a clarification that, for these people that everybody calls chemists, the law will call them chemists as well.*

Hearing on A.B. 250 Before the Assembly Judiciary Comm., 75th Leg. (Nev., March 16, 2009) (emphasis added).

preexisting term chemist, revoke the established requirement that chemists be court-qualified, such an attenuated conclusion is without justification. *See Presson v. Presson*, 38 Nev. 203, 208, 147 P. 1081, 1082 (1915) ("Repeals by implication are not favored."); *Burns v. Reed*, 500 U.S. 478, 497 (1991) (rejecting proposition that Congress intended to revoke the common-law tradition of legislative immunity by covert inclusion in the general language of 1871 statute aimed at enforcing the Fourteenth Amendment).

Moreover, to ask that this court draw such a conclusion would lead to unreasonable results. *See Presson*, 38 Nev. at 210, 147 P. at 1083 ("[T]he [L]egislature cannot be presumed to have done an absurd thing . . . ."); *City of Reno v. Bldg. & Constr. Trades Council of N. Nev.*, 127 Nev. 114, 121, 251 P.3d 718, 722 (2011) ("[T]his court will not read statutory language in a manner that produces absurd or unreasonable results." (internal quotation omitted)). The State asks that this court presume the Legislature to have intended to surreptitiously change the law. However, the State has not set forth any reason why the Legislature would take such a roundabout approach to revoking the requirement that chemists qualify, as by covertly revealing the revocation as an intention that must be deduced from the act of defining the word chemist. That is, this court would have to accept that the Legislature took the former approach, as an alternative to quite simply and directly stating that chemists are to be exempt from the expert qualification requirement. Given that the Legislature is tasked with providing a clear recitation of the laws that govern this state, presuming such an indirect approach to lawmaking would be to presume the Legislature to have done something absurd. We decline to so presume.

But, the State argues, if we read the statute as Valenti suggests, maintaining the expert qualification requirements for chemists and other experts alike, the new language defining chemist will be rendered nugatory or mere surplusage. Generally, "[n]o part of a statute should be rendered nugatory, nor any language turned to mere surplusage if such consequences can properly be avoided." *Paramount Ins., Inc. v. Rayson & Smitley*, 86 Nev. 644, 649, 472 P.2d 530, 533 (1970) (internal quotation omitted). In this case, to the extent the language defining chemist is rendered nugatory or mere surplusage due to our construal, we conclude such consequences are not properly avoidable.

*The reasoning and public policy set forth in Cramer v. State further direct that the court qualification requirement should be maintained for all experts, including chemists*

In *Cramer v. State, DMV*, we similarly maintained the expert qualification requirement for experts, but we declined to extend our holdings to chemists. 126 Nev. 388, 393 n.3, 240 P.3d 8, 11 n.3 (2010). We specified: "In this opinion, we do not address whether a chemist who submits an affidavit pursuant to NRS 50.320 must be qualified as an expert, as that issue was not raised in this appeal." *Id.* Now properly before us, we have taken this opportunity to decide the issue. In so doing, we find further support for our conclusions in the reasoning and public policy grounds outlined in *Cramer*, as they dictate our construal of the statute. *See J.E. Dunn*, 127 Nev. at 82, 249 P.3d at 508 (concluding public policy favored one interpretation of a statute over another).

In arriving at our *Cramer* holdings, we noted that in accordance with NRS 233B.123(4), "a defendant in an administrative proceeding is entitled to confront and cross-examine the witnesses against him." *Cramer*, 126 Nev. at 394, 240 P.3d at 12 (citing *State, Dep't of Motor*

*Vehicles & Pub. Safety v. Evans*, 114 Nev. 41, 45, 952 P.2d 958, 961 (1998)). To preserve that statutory right, in light of the affidavit exception created by NRS 50.320, we ruled that the affidavit's affiant must be once subject to the adversarial process of court qualification. *See id.* (reading NRS 233B.123(4) and NRS 50.320 together). We reasoned that "[a]llowing an affidavit from a proposed expert, which lacks the reliability and trustworthiness of an affidavit from one who has been qualified to testify as an expert, would violate NRS 50.320's plain meaning and lead to absurd results, including the revocation of driver's licenses based on a lay-person's affidavit." *Id.*

Here, the same concerns for reliability and trustworthiness of an expert affidavit arise when a person who is statutorily defined as a chemist is the affiant. The Legislature's act of defining "chemist" is not a guarantee to the trustworthiness or reliability of a chemist's affidavit. The adversarial test of cross-examination, to which experts submit at the time of court qualification, is better suited to defend these standards. *See id.* at 394-95, 240 P.3d at 12-13. In sum, *Cramer*'s holdings were founded on preserving reliability and trustworthiness in administrative procedure. Keeping consistent with its principles, we expand its holdings and include chemists under the umbrella of experts subject to NRS 50.320(1)'s expert qualification requirement.

In accord with reason and public policy, Maloney's affidavit, which indicated that she was a chemist but failed to state whether she had been qualified in a Nevada court of record, was inadmissible at Valenti's revocation hearing. *See id.* at 390, 240 P.3d at 9 (concluding that an expert's affidavit is inadmissible when the author has not been qualified

*or* the affidavit fails to state the court wherein he or she was qualified (emphasis added)). In the affidavit's absence, it cannot be said that the evidence relied upon by the administrative law judge was sufficiently substantial to revoke Valenti's driver's license.

Accordingly, we reverse and remand to the district court for further proceedings consistent with this opinion.

_____, J.
Douglas

We concur:

_____, J.
Parraguirre

_____, J.
Cherry