CITY OF NORTH LAS VEGAS, APPELLANT, *v.*
MALLORY WARBURTON, RESPONDENT.

No. 55502

October 6, 2011 · 262 P.3d 715

*Lewis Brisbois Bisgaard & Smith, LLP*, and *Daniel L. Schwartz* and *Marla R. Frederick*, Las Vegas, for Appellant.

*Law Office of James R. Cox* and *James R. Cox*, Las Vegas, for Respondent.

Before SAITTA, C.J., HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we must determine, for the purpose of awarding workers' compensation benefits, the proper calculation of the average monthly wage of an injured employee who claims to have changed jobs as of the day of the employee's industrial accident. NAC 616C.444 bases the calculation of the average monthly wage for such an employee on payroll information regarding the employee's primary job at the time of the accident. Although the administrative appeals officer in this case failed to make any specific findings regarding respondent Mallory Warburton's primary job at the time of her accident, we conclude that substantial evidence supports the district court's determination that Warburton's primary job at the time of the accident was that of pool manager. Thus, the appeals officer's conclusion that Warburton's average monthly wage had to be calculated based on the rate of pay of a water safety instructor is not supported by substantial evidence, and we affirm the district court's order granting judicial review and reversing the appeals officer's decision.

### FACTS AND PROCEDURAL HISTORY

Warburton started working for appellant City of North Las Vegas (the City) in 2005 as a lifeguard and eventually became a water safety instructor. In 2006, she was promoted to manager of one of the City's pools. Although she expected to make $12 an hour because of the promotion, she was only paid $10 an hour while her promotion was being processed.[1] Despite this fact, Warburton's timecard reflected that she was a pool manager; she oversaw the staffing, cleanliness, and safety of the pool she was supervising; and she had keys to open and close the pool. Additionally, other City employees testified that Warburton was their manager.

---

[1]The City admits in its opening brief that Warburton was in the process of being promoted to pool manager.

During Warburton's employment with the City, the pools in North Las Vegas sustained damage from break-ins and vandalism. In an attempt to reduce the problem, Warburton's supervisor asked her and other City employees to check on the pools when they were nearby. After picking up her paycheck and additional work uniforms at another City pool, Warburton was driving in the direction of her pool when another driver crossed into her lane of traffic going the wrong direction and struck Warburton head-on. Warburton suffered numerous injuries, one of which resulted in the amputation of her foot at the ankle. She then filed a workers' compensation claim.

After it was determined that Warburton's injuries arose out of and in the course of her employment with the City,[2] the City started paying workers' compensation benefits to Warburton. To determine the benefits that Warburton was entitled to, the City used the rate of $10 an hour to calculate her average monthly wage, which was the rate of pay she was receiving at the time of the accident as a water safety instructor. The amount of her benefits did not reflect her recent promotion to pool manager. Warburton administratively appealed the City's determination of her benefits, and the hearing officer instructed the City to redetermine her benefits using the $12-an-hour rate of pay for a pool manager. The City appealed, and the appeals officer reversed the hearing officer, finding that Warburton's benefits should be based on the $10-an-hour rate of pay she was actually receiving at the time of the accident. Warburton petitioned the district court for judicial re-

---

[2]The City separately appealed the district court's denial of its petition for judicial review of an administrative appeals officer's finding that, because Warburton's injuries arose out of and in the course of her employment with the City, Warburton was entitled to workers' compensation benefits. After concluding that the appeals officer's determination was supported by substantial evidence, this court affirmed the district court's denial of the City's petition. *See City of North Las Vegas v. Warburton*, Docket No. 55883 (Order of Affirmance, September 29, 2011).

One of the City's arguments on appeal in this case is that the district court erred by allowing Warburton to rely on the litigation regarding whether her injuries arose out of and in the course of her employment to prove that she was a pool manager. Warburton, however, argues that issue preclusion should apply, and, thus, she should be considered a pool manager for purposes of this appeal. We conclude that Warburton's argument is without merit because whether she was a pool manager was not an issue that was " 'actually and necessarily litigated.' " *See In re Sandoval*, 126 Nev. 136, 139, 232 P.3d 422, 423-24 (2010) (quoting *Five Star Capital Corp. v. Ruby*, 124 Nev. 1048, 1055, 194 P.3d 709, 713 (2008)). Therefore, issue preclusion is not applicable. However, we note that the transcripts from the administrative hearing on whether Warburton's injuries arose out of and in the course of her employment make up a majority of the record for this appeal, and, therefore, the factual findings for this case are largely based on those transcripts.

view. The district court granted the petition and reversed the appeals officer's decision. The district court concluded that, as the hearing officer had found, Warburton had been promoted to pool manager at the time of the accident, and her benefits should be determined using the higher rate of pay of $12 an hour. The City appeals the district court's order.

## DISCUSSION

The dispute in this case concerns the method of calculating the average monthly wage for the purpose of determining workers' compensation benefits for an employee who has been promoted but is injured before receiving the wage increase associated with the promotion. The City contends that the applicable provisions of the Nevada Administrative Code require the determination of Warburton's workers' compensation benefits to be based on the rate of pay she was actually earning as a water safety instructor at the time of the accident ($10 an hour). Warburton maintains that her benefits should be determined using the rate of pay for her primary job at the time of the accident, that of a pool manager ($12 an hour), even though she had not yet received the wage increase associated with her promotion. Resolving this dispute requires us to interpret various provisions of the Nevada Administrative Code.

The standard for reviewing petitions for judicial review of administrative decisions is the same for this court as it is for the district court. *City of Reno v. Bldg. & Constr. Trades*, 127 Nev. 114, 119, 251 P.3d 718, 721 (2011). Like the district court, we review an administrative appeals officer's determination of questions of law, including statutory interpretation, de novo. *Star Ins. Co. v. Neighbors*, 122 Nev. 773, 776, 138 P.3d 507, 509-10 (2006). We review an administrative agency's factual findings " "for clear error or an arbitrary abuse of discretion" " and will only overturn those findings if they are not supported by substantial evidence. *Day v. Washoe County Sch. Dist.*, 121 Nev. 387, 389, 116 P.3d 68, 69 (2005) (quoting *Construction Indus. v. Chalue*, 119 Nev. 348, 352, 74 P.3d 595, 597 (2003)). If the agency fails to make a necessary finding of fact, we "may imply the necessary factual finding[ ]," so long as the agency's "conclusion itself" provides a proper basis for the implied finding. *See State, Dep't of Commerce v. Soeller*, 98 Nev. 579, 586, 656 P.2d 224, 228 (1982). We do not give any deference to the district court decision when reviewing an order regarding a petition for judicial review. *City of Reno*, 127 Nev. at 119, 251 P.3d at 721.

"When the text of a statute is plain and unambiguous, [we] should . . . not go beyond that meaning." *Star Ins. Co.*, 122 Nev.

at 776, 138 P.3d at 510. When interpreting multiple provisions, we must read the provisions in harmony, unless it is clear the Legislature intended otherwise. *City Council of Reno v. Reno Newspapers*, 105 Nev. 886, 892, 784 P.2d 974, 978 (1989). These rules of statutory construction also apply to administrative regulations. *Silver State Elec. v. State, Dep't of Tax.*, 123 Nev. 80, 85, 157 P.3d 710, 713 (2007).

Ordinarily, an injured employee's average monthly wage, used to determine the amount of the employee's workers' compensation benefits, is calculated by averaging a 12-week history of past earnings. NAC 616C.435(1); NRS 616C.420. But, if a 12-week history is not available, the employee's average monthly wage can be calculated by using a 4-week history. NAC 616C.435(4). If a 4-week history is not available, then "average earnings must be projected using the rate of pay on the date of the accident and the projected working schedule." NAC 616C.435(5). However, pursuant to NAC 616C.435(7)(a), if the previously discussed

> methods of determining a period of earnings cannot be applied reasonably and fairly, an average monthly wage must be calculated by [using] . . . [t]he sum which reasonably represents the average monthly wage of the injured employee as defined in NAC 616C.420 to 616C.447, inclusive, at the time his injury . . . occurs.

Here, Warburton had been promoted to pool manager and was performing the duties required by that job when her injury occurred. However, the City had not yet increased her pay to reflect the promotion, and a dispute exists as to Warburton's primary job as of the date of the accident. The appeals officer made no finding as to Warburton's primary job and based her determination of benefits on the average monthly wage calculated from the 12-week history as set forth in NAC 616C.435(1). We conclude that this calculation does not "reasonably and fairly" determine the amount of Warburton's workers' compensation benefits.

NAC 616C.441(1) provides that "[t]he earnings of [the] injured employee on the date on which [the] accident occurs will be used to calculate the average monthly wage." However, NAC 616C.444, which provides for the calculation of the average monthly wage for an injured employee who has changed jobs as of the time of the accident, states, in pertinent part:

> The average monthly wage of an employee who permanently or temporarily changes to a job with different duties, rate of pay, or hours of employment, must be calculated using only information concerning payroll which relates to his *primary job* at the time of the accident.

(Emphasis added.) Because NAC 616C.444 governs the more specific method for calculating workers' compensation benefits when an employee has changed jobs, we conclude that NAC 616C.444 is the controlling regulation here. *See State, Tax Comm'n v. American Home Shield*, 127 Nev. 382, 388, 254 P.3d 601, 605 (2011) ("A specific statute controls over a general statute.").

Reading NAC 616C.444 in harmony with NAC 616C.435(7), we conclude that these administrative code provisions are plain and unambiguous. When an employee changed jobs at or before the time the employee was injured such that no 12-week or 4-week history of past earnings is available for the new job, NAC 616C.444 requires a finding of the employee's *"primary job* at the time of the accident" in order to calculate the employee's average monthly wage. (Emphasis added.) In this case, the appeals officer found that Warburton knew that she was going to be promoted to pool manager and earn $12 an hour, but concluded that Warburton's wage had to be based on what she was earning at the time of the accident. The appeals officer did not make a specific finding regarding Warburton's primary job at the time of the accident and, therefore, failed to correctly apply NAC 616C.444.

On Warburton's petition for judicial review, the district court, however, concluded that there was ample evidence in the record demonstrating that Warburton's primary job was that of pool manager because she was performing all the duties of a pool manager, had been given keys to the pool, and other employees viewed her as their manager. While the appeals officer failed to make the "necessary factual finding[ ]" with respect to Warburton's primary job at the time of the accident, the appeals officer did find that Warburton viewed herself as a pool manager and knew that she was going to make $12 an hour, but at the time of the accident, Warburton was only making $10 an hour. *See Soeller*, 98 Nev. at 586, 656 P.2d at 228. We may imply from these findings that the appeals officer would have found that Warburton's primary job at the time of the accident was that of a pool manager. *See id.* Thus, because we determine that the appeals officer would have concluded that Warburton's primary job at the time of the accident was that of a pool manager, we affirm the district court's order granting Warburton's petition for judicial review, reversing the appeals officer and affirming the hearing officer's decision that Warburton's workers' compensation benefits must be determined using an average monthly wage calculation at the $12-an-hour rate of pay.

SAITTA, C.J., and PARRAGUIRRE, J., concur.