**137 Nev., Advance Opinion |**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

VANCE TAYLOR,
Appellant,
vs.
TRUCKEE MEADOWS FIRE
PROTECTION DISTRICT; AND
ALTERNATIVE SERVICE CONCEPTS,
LLC,
Respondents.

No. 78971

**FILED**

FEB 04 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a workers' compensation case. Second Judicial District Court, Washoe County; Lynne K. Simons, Judge.

*Affirmed.*

Hutchison & Steffen, PLLC, and Michael K. Wall, Las Vegas; Hutchison & Steffen, PLLC, and Jason D. Guinasso, Reno,
for Appellant.

Thorndal Armstrong Delk Balkenbush & Eisinger and Robert F. Balkenbush and Michael Winn, Reno,
for Respondents.

BEFORE HARDESTY, C.J., PARRAGUIRRE and CADISH, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

21-03383

*OPINION*

By the Court, HARDESTY, C.J.:

Under NRS 616C.475(8), an employer may offer temporary, light-duty employment to an injured employee in lieu of paying temporary total disability benefits to that employee. In this appeal, an employee challenges the validity of an employer's offer of temporary, light-duty employment, maintaining that the *location, schedule, wages, and duties* of the offered temporary employment as a secretary are not substantially similar to the employee's preinjury position as a fire captain. But for a temporary, light-duty employment offer to be valid, NRS 616C.475(8) requires only that the offered position be substantially similar to the employee's preinjury position in *location, hours, wages, and benefits*. We conclude that although the term "hours" within the meaning of the statute contemplates "schedule" as well as the number of hours worked, the offered employment was substantially similar to the preinjury position as to both schedule and number of hours, as well as location, wages, and benefits. As a result, the offer of temporary, light-duty employment was valid under NRS 616C.475(8). Accordingly, we affirm the district court's denial of the employee's petition for judicial review.

## FACTS AND PROCEDURAL HISTORY

In April 2016, while working as a fire captain for respondent Truckee Meadows Fire Protection District (TMFPD), appellant Vance Taylor severely injured his shoulder during a training exercise. Taylor filed a claim for workers' compensation and received temporary total disability (TTD) benefits through respondent Alternative Service Concepts, LLC (ASC). While he awaited surgery on his shoulder, in lieu of TTD benefit payments, Taylor accepted light-duty work at TMFPD's administrative

office, where he worked as a secretary Monday through Friday from 8 a.m. to 5 p.m.[1] This position required Taylor to complete data entry and other filing projects under the supervision of the administrative office's secretary. Three months after his injury, Taylor underwent surgery on his shoulder and began receiving TTD benefits again.

In September 2016, after Taylor's doctors released him to light duty, TMFPD offered Taylor temporary, light-duty employment in the same administrative position he filled prior to surgery. Taylor refused the light-duty employment offer, claiming that the offer did not comply with Nevada law, as it changed his work schedule and required him to perform tasks and duties that are "humiliating and unlawful." Because TMFPD extended a temporary, light-duty employment offer to Taylor, ASC terminated Taylor's TTD benefits at that time.

Taylor administratively appealed ASC's decision to terminate his TTD benefits. He argued that the light-duty position was not substantially similar to his preinjury position in respect to location, hours, wage, supervisors, and job duties. The hearing officer upheld ASC's termination of benefits, finding that TMFPD made a valid offer of temporary, light-duty employment, which Taylor rejected. Taylor appealed that decision, and the appeals officer affirmed the hearing officer's decision. Taylor then petitioned the district court for judicial review, claiming that the denial of TTD benefits was erroneous. The district court denied Taylor's petition for judicial review, and this appeal followed.

---

[1]We note that this employment offer is not in the record, but Taylor testified to these facts before the appeals officer, and neither TMFPD nor ASC challenged them.

## DISCUSSION

On appeal, Taylor argues that TMFPD's offer of temporary, light-duty employment was not a reasonable and valid offer under Nevada law because it was not "substantially similar" to his preinjury position as a fire captain and thus did not comply with NRS 616C.475(8).

We review an administrative appeals officer's decision in the same manner as the district court. *City of N. Las Vegas v. Warburton*, 127 Nev. 682, 686, 262 P.3d 715, 718 (2011). We review questions of law, including the administrative agency's interpretation of statutes, de novo. *Id.* We review findings of fact "for clear error or an arbitrary abuse of discretion and will only overturn those findings if they are not supported by substantial evidence." *Id.* (internal quotation marks omitted).

Statutorily, an employee who is injured in a work-related accident may receive TTD benefits. Payments for TTD end, however, when "[t]he employer offers the employee light-duty employment or employment that is modified according to the limitations or restrictions imposed by a physician or chiropractor." NRS 616C.475(5)(b). Under NRS 616C.475(8), the temporary, light-duty employment offered by the employer must (1) be "*substantially similar* to the employee's position at the time of his or her injury in relation to the *location* of the employment and the *hours* the employee is required to work"; (2) "[p]rovide[ ] a *gross wage* that is . . . *substantially similar* to the gross wage the employee was earning at the time of his or her injury"; and (3) "[have] the *same employment benefits* as the position of the employee at the time of his or her injury." NRS 616C.475(8)(a)-(c) (emphases added). The purpose of NRS 616C.475(8) is to ensure that the employer makes a legitimate offer of employment, rather than one that imposes an unreasonable burden on the employee. *See EG & G Special Projects, Inc. v. Corselli*, 102 Nev. 116, 119, 715 P.2d 1326, 1328

(1986) (analyzing a similar requirement previously established by regulation).

Taylor contends that the temporary, light-duty employment offer of secretarial work was not "substantially similar" to his preinjury position in location, hours, or benefits and was thus not a reasonable offer in accordance with NRS 616C.475. He further argues that the offer was not reasonable because it involved different job duties and a different chain of command than his preinjury position and because it was humiliating work. We disagree.

*TMFPD's offered employment was substantially similar in location to Taylor's preinjury position*

The temporary, light-duty employment was located at an administrative office that was six miles away from Taylor's preinjury employment, but closer to his residence. We conclude that although there was a change in location, the new employment location was substantially similar to Taylor's previous work location in proximity and in distance from Taylor's residence, and Taylor fails to explain how this new location imposed an unreasonable burden on him.[2]

*TMFPD's offered employment was substantially similar in hours to Taylor's preinjury position*

Taylor's preinjury schedule required him to work 48 hours on and 96 hours off each work week. Conversely, the light-duty job required an administrative schedule from 8 a.m. to 5 p.m. Monday through Friday, totaling 40 hours a week. Taylor acknowledges that the light-duty position required fewer hours per week than his preinjury position, but he argues

---

[2]Taylor's argument that working as an office secretary is different in function than working at the station house is addressed below under the reasonableness prong.

that the word "hours" in the statute refers to an examination of an employee's schedule (i.e., shifts) as well as the actual hours worked. Taylor argues that the administrative schedule was not substantially similar to his preinjury firefighter schedule and, as a result, caused hardship to his family because they had to obtain childcare on days he normally would have had off. In response, TMFPD argues that the working hours of the administrative position were substantially similar to those of Taylor's preinjury position, especially as he would have received the same wages working fewer hours. TMFPD further contends that, although the administrative position involved a different work schedule, Taylor did not provide sufficient evidence that this would result in a financial hardship for him. Thus, the parties provide different interpretations of the term "hours" as used in NRS 616C.475(8)(a).

"[W]hen the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it." *Nev. Dep't of Corr. v. York Claims Servs., Inc.*, 131 Nev. 199, 203, 348 P.3d 1010, 1013 (2015) (alteration in original) (internal quotation marks omitted). "If, however, a statute is subject to more than one reasonable interpretation, it is ambiguous," and this court "look[s] to [its] legislative history to ascertain the Legislature's intent." *Id.* (second alteration in original) (internal quotation marks omitted).

"Hours" is defined as "the amount of time during the day or week that you work." *Hours, Cambridge Business English Dictionary* (2011), https://dictionary.cambridge.org/us/dictionary/english/hours (last visited Nov. 10, 2020). However, "hours" is also defined as a period of time one might equate with the term "schedule." *See, e.g., Hour, Webster's Third New International Dictionary* (2002) (defining "hours" to include "a fixed,

stated, or customary time or period of time <*[hour]s* of business>"); *Hour, The American Heritage Dictionary of the English Language* (5th ed. 2011) (defining "hours" to include "[a] set or customary period of time for a specified activity"); *Hour, New Oxford American Dictionary* (3d ed. 2010) (defining "hour" to include "a fixed period of time for an activity, such as work"). Furthermore, this court has interchangeably used the terms "hours" and "schedule." *See Garman v. State, Emp't Sec. Dep't*, 102 Nev. 563, 567, 729 P.2d 1335, 1337 (1986) (using the terms "schedule" and "hours" interchangeably when holding the Employment Security Department erroneously terminated the appellant's unemployment benefits). Therefore, the term "hour" is susceptible to more than one plausible interpretation and is ambiguous. *See Banegas v. State Indus. Ins. Sys.*, 117 Nev. 222, 225, 19 P.3d 245, 247 (2001) (holding that a statute is ambiguous where it "is susceptible to more than one natural or honest interpretation"). Accordingly, we construe it "with what reason and public policy would indicate the Legislature intended." *Id.* at 225, 19 P.3d at 247.

Here, the legislative history demonstrates that the Legislature intended "hours" to carry an expansive meaning. When asked if the State Industrial Insurance System (SIIS) considered babysitter problems "when determining if a claimant could *work a certain shift*, or get to a certain job," SIIS's general counsel responded that "all factors were considered." Hearing on S.B. 316 Before the Senate Commerce & Labor Comm., 67th Leg. (Nev., Feb. 4, 1993) (testimony of Scott Young, General Counsel, SIIS) (emphasis added). Additionally, in clarifying the proposed changes to temporary, light-duty employment, SIIS's general counsel stated that an "injured worker could not refuse" an employer's offer of temporary, light-duty employment if it was reasonable "in terms of those three categories

(pay rate, *shift*, hours of employment)." Hearing on S.B. 316 Before the Senate Commerce & Labor Comm., 67th Leg. (Nev., Feb. 25, 1993) (testimony of Scott Young, General Counsel, SIIS) (emphasis added). This testimony clearly shows that the term "hours" in NRS 616C.475(8)(a) contemplates more than just the number of actual hours worked, but instead encompasses the schedule of the work. *See Shift, Merriam-Webster's Collegiate Dictionary* (11th ed. 2020) (defining "shift" to include "a scheduled period of work or duty").

Reason and public policy also support this construction of the term "hours." As we stated in *Corselli*, an employer's offer of light-duty employment must be reasonable. 102 Nev. at 119, 715 P.2d at 1328. Otherwise, "the employer could make a job offer that is intended only for refusal and conveniently relieve itself of its obligation to the injured worker's rehabilitation." *Id.* Nevada is home to many businesses and industries that are open 24 hours a day, 7 days a week. If an injured employee previously worked 40 hours per week during the day, an offer of temporary, light-duty employment for 40 hours per week only at night likely would be unreasonable and contrary to the concerns we identified in *Corselli*. *Id.* Thus, we conclude that the term "hours" in NRS 616C.475(8)(a) includes a consideration of an employee's preinjury work schedule.

Notwithstanding the requirement to consider a light-duty employment offer's schedule, we conclude that the light-duty job offered to Taylor was substantially similar to his preinjury firefighter job in terms of hours. Taylor's preinjury employment required that he work 48 hours on and 96 hours off. The offered light-duty job required Taylor to work a typical administrative schedule, from 8 a.m. to 5 p.m. Monday through

Friday, totaling 40 hours a week. Although the administrative schedule was not identical to Taylor's firefighter schedule, it also did not require him to work unusual hours or an atypical timetable. Both jobs required Taylor to work at least half of his shift during the day. While the light-duty job schedule was entirely during the day as opposed to the firefighter schedule's fifty-fifty split between day and night, the administrative position did not require Taylor to work in the evenings, which some might view as a more onerous burden. This, coupled with the fact that the temporary, light-duty job would have required Taylor to work fewer hours than his preinjury job but at the same rate of pay, suggests that the offer was a legitimate attempt to provide reasonable light-duty employment pending a return to full health. While perhaps not completely burden-free, Taylor has not demonstrated that the light-duty employment offer posed an unreasonable burden, such as that in *Corselli* or in the hypothetical presented above. *See id.* (concluding that a job offer that required an employee to drive across state lines for work five days per week, where his preinjury job provided him with transportation to work a three-day-on-four-day-off schedule, posed an unreasonable burden on the employee).

Common sense also requires us to conclude that these schedules are substantially similar. To say that this administrative schedule is not substantially similar to Taylor's preinjury firefighter schedule would in effect preclude injured firefighters from ever receiving an offer of temporary, light-duty employment, since such nonfirefighter employment generally is not undertaken on a firefighter schedule. Thus, an offer of light-duty employment to injured firefighters often will naturally include some variation in schedule so as to provide the firefighters with an available job that falls within the physical restrictions placed on them by their treating

SUPREME COURT
OF
NEVADA

(O) 1947A

9

physicians. Although Taylor argues that there were other jobs available with hours similar to his preinjury work schedule, the record contains no evidence of any alternative position with the same schedule as his preinjury job and that satisfied the physical limitations imposed on him by his doctor. Taylor testified about the possibility of certain tasks that he might assist the Battalion Chief or other firefighters with, but there was no evidence presented by the Chief or any other official indicating that an alternative position was actually available, and none of the tasks identified by Taylor were employment positions as such but rather tasks that other employees complete as part of their own work duties. The statute does not require employers to create new, temporary positions for injured employees based on their preferences when other valid light-duty jobs already exist. Taylor has failed to meet his burden to show that the temporary, light-duty schedule was not substantially similar to his preinjury schedule. Thus, we conclude that TMFPD's offered employment was substantially similar in hours as to Taylor's preinjury position.

*TMFPD's offered employment was substantially similar in gross wage and had the same employment benefits as Taylor's preinjury position*

The gross wage that Taylor would have received if he had accepted the temporary, light-duty employment offer was an average of his past 12-week wage history and amounted to $10,115 a month. Taylor argues that the light-duty employment offer was invalid because it did not include overtime pay and did not provide an ability to bank holiday compensatory time. The record shows, however, that the 12-week period used to calculate the offered wage included two holidays, as well as a significant amount of overtime pay—189 hours to be exact. We conclude that because holiday time and overtime pay were included in this gross

wage, the light-duty position provided a substantially similar wage and the same employment benefits as the preinjury position.

*Taylor's offer of light-duty employment was reasonable*

Taylor argues that TMFPD's temporary, light-duty employment offer was also unreasonable because it changed his duties, his chain of command, and effectively "demoted" him. He contends that although he was unable to perform "the difficult obligations of a firefighter, such as carrying heavy equipment . . . he was able to perform many of the other functions of a firefighter." Yet, he claims, even though other work was "available" to him, TMFPD instead "assigned [him] to be a secretary's assistant and to perform menial tasks," which he characterizes as "humiliating, demoralizing[,] and degrading."

We disagree with Taylor's arguments and hold that TMFPD's offer of temporary, light-duty employment was reasonable because it was substantially similar to Taylor's preinjury position in location, hours, wages, and benefits, as required by NRS 616C.475(8). The statute does not require that an employee's light-duty job have the same duties or chain of command as his or her preinjury position. Rather, as the legislative history of the statute makes clear, NRS 616C.475(8) allows the employer to offer an injured employee work on a temporary basis "which otherwise might not qualify as an acceptable offer if it was made for permanent employment." Hearing on S.B. 316 Before the Senate Comm. of the Whole, 67th Leg. (Nev., Mar. 24, 1993) (statement of Senator Raymond Shaffer). One of the purposes of temporary, light-duty employment is to get employees back to work as soon as possible. *See* Hearing on S.B. 316 Before the Senate Commerce and Labor Comm., 67th Leg. (Nev., Feb. 25, 1993). Thus, given this purpose and the short-term nature of the light-duty employment offer, a light-duty job that is menial or otherwise in a different capacity as the

preinjury job is not unreasonable. *See id.* (statement of Scott Young, General Counsel, State Industrial Insurance System) (asserting that "even if the job itself is somewhat menial . . . [employees] should be required to take it [because] it's better than sitting at home and just drawing your [compensation]"); Hearing on S.B. 316 Before the Senate Comm. of the Whole, 67th Leg. (Nev., Mar. 24, 1993) (statement of Senator Raymond Shaffer) (noting that while "a truck driver, with a broken leg, could not drive his truck with a leg in a cast, . . . he might be able to work at a dispatch desk or [do] limited work in the office"). Taylor suffered from a shoulder injury and could not perform the physical requirements of a firefighter. The administrative office position was both available and satisfied Taylor's temporary physical limitations. It was in no way a demotion, as Taylor claims, but rather a temporary position that he was physically capable of doing until he recovered fully from his injury and could return to his job as a fire captain.

We further reject Taylor's contention that the administrative position was demeaning or humiliating to him. Secretaries and their assistants perform the necessary everyday tasks that are required to run organizations and businesses. The mere fact that an employee feels that a position is beneath him or her does not make the offer unreasonable or invalid. *See* NAC 616C.586(2)(a) ("Temporary employment at light duty . . . which is a part of the employer's regular business operations shall not be deemed to be demeaning or degrading or to subject the employee to ridicule or embarrassment.").

## *CONCLUSION*

Because TMFPD's offer of temporary, light-duty employment was reasonable and complied with NRS 616C.475(8), ASC was justified in

terminating Taylor's TTD benefits. Accordingly, we affirm the district court's decision to deny Taylor's petition for judicial review.

_____, C.J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A