137 Nev., Advance Opinion 79

## IN THE SUPREME COURT OF THE STATE OF NEVADA

CITY OF HENDERSON; AND CCMSI,
Appellants,
vs.
BRIAN WOLFGRAM, AN INDIVIDUAL,
Respondent.

No. 80982

FILED

DEC 23 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a workers' compensation matter. Eighth Judicial District Court, Clark County; William D. Kephart, Judge.

*Affirmed.*

Lewis Brisbois Bisgaard & Smith, LLP, and Daniel L. Schwartz and Joel P. Reeves, Las Vegas,
for Appellants.

Greenman Goldberg Raby & Martinez and Jason D. Mills, Las Vegas,
for Respondent.

BEFORE HARDESTY, C.J., STIGLICH, J., and GIBBONS, Sr. J.[1]

---

[1]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.

21-36620

## OPINION

By the Court, HARDESTY, C.J.:

Nevada's workers' compensation statutes place limitations on a claimant's ability to reopen a closed claim. One limitation is that a claimant must file an application to reopen a claim within one year of the claim's closing unless the injury incapacitated the claimant from earning "full wages" for a specified amount of time. NRS 616C.400(1); *see* NRS 616C.390(4)-(5). In this case, we are asked to determine whether respondent's inability to earn overtime due to his industrial injury equates to being incapacitated from earning "full wages," such that he can seek to reopen his claim more than one year after its closing. For the reasons stated below, we agree with the district court and appeals officer that respondent was incapacitated from earning "full wages" and therefore affirm the order denying the employer and its insurer's petition for judicial review.[2]

### FACTS AND PROCEDURAL HISTORY

While working for appellant City of Henderson as a firefighter, respondent Brian Wolfgram filed a workers' compensation claim for issues related to his hands and elbows. The City, via its insurer, appellant CCMSI (collectively, the City), accepted the claim. During Wolfgram's medical treatment, his doctor placed him on light-duty restrictions for a little more than two weeks. While the City paid Wolfgram his normal base salary during that time, it prohibited him from volunteering for overtime. Wolfgram sought no other benefits, and his claim closed on January 26, 2015.

---

[2]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

 

On February 6, 2017, based on medical advice that his hand and elbow issues may be recurring, Wolfgram requested to reopen his claim. The City denied the request and Wolfgram appealed. The appeals officer ultimately found that Wolfgram's inability to earn overtime while on light duty meant that he was incapacitated from earning full wages for the time specified under NRS 616C.400(1). And, because Wolfgram satisfied NRS 616C.400(1)'s period of incapacitation, the appeals officer concluded that NRS 616C.390(5) permitted Wolfgram to submit an application to reopen his claim more than a year after it had closed, otherwise referred to as "lifetime reopening rights." However, due to a lack of supporting medical evidence, the appeals officer denied Wolfgram's request to reopen his claim at that time. The City petitioned for judicial review of the appeals officer's finding that Wolfgram's inability to earn overtime while on light duty meant that he had not earned his full wages under NRS 616C.400(1). The district court denied judicial review after a hearing, concluding that Nevada law provided overwhelming support for the appeals officer's decision. The City now appeals.

## DISCUSSION

We, like the district court, review administrative agency decisions "for clear error or an arbitrary and capricious abuse of discretion" and defer to an agency's findings of fact and "fact-based conclusions of law . . . if they are supported by substantial evidence." *Law Offices of Barry Levinson, P.C. v. Milko*, 124 Nev. 355, 362, 184 P.3d 378, 383-84 (2008) (citation and internal quotation marks omitted). "Substantial evidence exists if a reasonable person could find the evidence adequate to support the agency's conclusion." *Id.* at 362, 184 P.3d at 384; *see also* NRS 233B.135(3)-(4) (defining substantial evidence and discussing judicial review of agency decisions). We review purely legal questions, such as statutory

Supreme Court
OF
Nevada

(O) 1947A

3

interpretation issues, de novo. *City of N. Las Vegas v. Warburton*, 127 Nev. 682, 686, 262 P.3d 715, 718 (2011).

The City argues that the appeals officer erred in concluding Wolfgram did not receive his "full wages" under NRS 616C.400(1) because he received the entirety of his base pay while on light duty. It asserts that overtime is voluntary and therefore speculative and points out that Wolfgram never made a claim for lost wages. Wolfgram responds that the appeals officer's decision is a correct statement of the law and supported by substantial evidence. He further asserts that it does not matter if overtime was voluntary when the record shows that he regularly worked overtime immediately before the injury and that the City prohibited him from working overtime while on light duty.

NRS 616C.390 addresses the reopening of closed workers' compensation claims. As pertinent here, the statute provides that a claimant must seek to reopen a claim "within 1 year after the date on which the claim was closed if . . . [t]he claimant did not meet the minimum duration of incapacity as set forth in NRS 616C.400 as a result of the injury."[3] NRS 616C.390(5)(a). If the claimant meets NRS 616C.400's minimum duration of incapacitation, however, then an insurer must reopen the claim, despite more than a year passing since its closing, if the claimant meets other enumerated criteria. NRS 616C.390(5) ("If an application to

_____

[3]The statute sets forth conjunctive requirements. If a claimant fails to meet the minimum duration of incapacity *and* did not receive a permanent partial disability rating, he must seek to reopen the claim within one year. NRS 616C.390(5)(a)-(b). The parties agree that Wolfgram did not receive a permanent partial disability rating for his claim but dispute whether he met the minimum duration of incapacity.

reopen a claim . . . is made pursuant to this subsection, the insurer shall reopen the claim if the requirements set forth in . . . subsection 1 are met.").

NRS 616C.400(1) sets forth the minimum duration of incapacitation as when "an injury . . . incapacitate[s] the employee for at least 5 consecutive days, or 5 cumulative days within a 20-day period, from earning full wages." Both parties present reasonable arguments as to whether "full wages" includes the ability to earn overtime, and we therefore conclude the statute is ambiguous in this respect.[4] *See Banegas v. State Indus. Ins. Sys.*, 117 Nev. 222, 225, 19 P.3d 245, 247 (2001) (holding that a statute is ambiguous if it "is susceptible to more than one natural or honest interpretation"). We therefore will construe it "consistently with what reason and public policy would indicate the Legislature intended," as "the Legislature's intent is the controlling factor." *Id.* And we will avoid constructions that would lead to an absurd result. *Gallagher v. City of Las Vegas*, 114 Nev. 595, 599-600, 959 P.2d 519, 521 (1998) (holding that the interpretation "should be in line with what reason and public policy would indicate the [L]egislature intended, and should avoid absurd results").

"[F]ull wages" is not defined in the workers' compensation statutes or in the Nevada Administrative Code, and the phrase predates any available legislative history. We faced a similar lack of legislative history in interpreting a workers' compensation statute in *Banegas*. 117 Nev. at 226, 19 P.3d at 247-48 (noting that the statutory language before the court "remain[ed] largely unchanged since the original industrial

---

[4]The parties agree that the time period within which the City prohibited Wolfgram from earning overtime exceeded 5 days within a 20-day period. *See* NRS 616C.400(1). We therefore need not address that portion of the statute.

insurance statutes were adopted in 1913" and that committee minutes related to the statutory provision were "virtually nonexistent"). Regardless, we concluded in *Banegas* that we could still discern the Legislature's intent behind the language at issue "by reviewing the [statutory scheme] as a whole." *Id.* at 228, 19 P.3d at 249. We take the same approach to confront the statutory interpretation issue in this case.

To that end, we find the definitions of "[w]ages" and "average monthly wage" in the workers' compensation scheme informative. The statute addressing the reopening of claims defines "[w]ages" as "any remuneration paid by an employer to an employee" to include "[c]ommissions and bonuses." NRS 616C.390(11)(c)(1). This suggests that "full wages" may include more than just an employee's base pay. Similarly, NAC 616C.420 defines a claimant's "average monthly wage" as "the total gross value of *all* money, goods and services received by an injured employee from his or her employment to compensate for his or her time or services." (Emphasis added.) And NAC 616C.423(1)(n) explicitly includes "[p]ayment[s] for overtime" as money that must be included when calculating an employee's "average monthly wage." *See also* NRS 233B.040(1)(a) (providing that the Nevada Administrative Code has "the force of law"); *Banegas*, 117 Nev. at 227, 19 P.3d at 248 (recognizing that "the Legislature may authorize administrative agencies to make rules and regulations supplementing legislation"). To conclude that "full wages" as used in NRS 616C.400(1) is always limited to the employee's base pay would therefore be contrary to how "wages" is used elsewhere in the statutory scheme, leading to an absurd result. It appears, instead, that the Legislature's intent was that "full wages" could include more than just a

SUPREME COURT
OF
NEVADA

(O) 1947A

6

claimant's base pay. We therefore hold that "full wages" as used in NRS 616C.400(1) can include overtime pay.

We now turn to the appeals officer's conclusion that Wolfgram's injury incapacitated him from earning full wages within the meaning of NRS 616C.400(1) because he could not work overtime. Despite overtime being voluntary, the City does not dispute that it precluded Wolfgram from working overtime while he was on light duty due to his injury. And evidence in the record shows that, in the 12 weeks preceding his industrial injury, Wolfgram worked 96 hours of overtime, making up approximately 15 percent of his pay in that time period.[5] This constitutes substantial evidence supporting the appeals officer's conclusion that Wolfgram regularly worked overtime in the time period immediately preceding his injury such that, by not being able to work overtime while on light duty, he was incapacitated from earning his full wages. *See Law Offices of Barry Levinson*, 124 Nev. at 362, 184 P.3d at 384; *see also Look's Case*, 185 N.E.2d 626, 628 (Mass. 1962) (holding that an injury incapacitates an employee when it causes "an impairment of earning capacity" and, thus, the question is whether the record supports a finding that the employee's "injury has lessened his ability to work"); *Phipps v. Campbell, Wyant & Cannon Foundry, Div. of Textron, Inc.*, 197 N.W.2d 297, 305-06 (Mich. Ct. App. 1972) (holding, under a similar statute, that an employee did not earn full wages when his average daily wage decreased during the period of incapacitation).

---

[5]This would be the time period used to calculate a claimant's average monthly wage. *See* NAC 616C.435(1) (providing that, generally, "a history of earnings for a period of 12 weeks must be used to calculate an average monthly wage").

Accordingly, the appeals officer did not err in concluding that Wolfgram had lifetime reopening rights for his claim.

## CONCLUSION

We conclude that the Legislature intended that "full wages" as used in NRS 616C.400(1) may include payments for overtime. And, because substantial evidence otherwise supports the appeals officer's findings in this case, we affirm the district court's order denying the petition for judicial review.

_____ , C.J.
Hardesty

We concur:

_____ , J.
Stiglich

_____ , Sr. J.
Gibbons