140 Nev., Advance Opinion 44

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE REDEVELOPMENT AGENCY OF
THE CITY OF SPARKS,
Appellant,
vs.
NEVADA LABOR COMMISSIONER, A
NEVADA ADMINISTRATIVE AGENCY;
AND LABORERS' INTERNATIONAL
UNION OF NORTH AMERICA, LOCAL
169, AN UNINCORPORATED
ASSOCIATION,
Respondents.

No. 85630



FILED

JUN 27 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review of a Labor Commissioner decision. First Judicial District Court, Carson City; William A. Maddox, Sr. Judge.

*Reversed and remanded with instructions.*

Wesley K. Duncan, City Attorney, and Brandon C. Sendall, Senior Assistant City Attorney, Sparks,
for Appellant.

Aaron D. Ford, Attorney General, and Andrea Nichols, Senior Deputy Attorney General, Carson City,
for Respondent Nevada Labor Commissioner.

Michael E. Langton, Reno,
for Respondent Laborers' International Union of North America, Local 169.

BEFORE THE SUPREME COURT, CADISH, C.J., and PICKERING and BELL, JJ.

24-22327

## OPINION

By the Court, PICKERING, J.:

Under Nevada's Community Redevelopment Law, if a redevelopment agency transfers property to a developer for less than its fair market value, NRS 279.500(2)(a), or provides financial incentives to a developer worth more than $100,000, NRS 279.500(2)(c), then the agency's agreement with the developer must include a clause requiring payment of prevailing wages. In this case, the Labor Commissioner considered a transaction where a redevelopment agency transferred property to the developer of an apartment project in exchange for the developer agreeing to a deed restriction obligating it to maintain free public parking on the property for the next 50 years. The parties structured the transaction this way because, while the developer preferred a cash-for-property exchange, the agency could not afford to lose public parking in the downtown redevelopment area. Appraisers valued the property and the 50-year public parking obligation as an equivalent exchange, and the Labor Commissioner made no finding that the agency transferred the property for less than its fair market value. Although NRS 279.500(2)(a) did not apply, the Labor Commissioner nonetheless determined that, because the redevelopment agency received "future compensation" as opposed to cash for the property, it provided the developer a "financial incentive" worth more than $100,000, so NRS 279.500(2)(c) applied. On this basis, the Labor Commissioner assessed a penalty against the redevelopment agency for not requiring the developer to pay prevailing wages on the project.

The question before us is whether the Labor Commissioner's decision squares with the plain language of NRS 279.500(2). We hold that it does not. The statute does not reference "future compensation," much less equate its receipt with a redevelopment agency giving a developer

Supreme Court
OF
Nevada

(O) 1947A

2

"financial incentives [worth] more than \$100,000." NRS 279.500(2)(c). Without a finding that the present value of the parking obligation was less than the fair market value of the property, *see* NRS 279.500(2)(a), or evidence of a financial incentive worth more than \$100,000, *see* NRS 279.500(2)(c), the penalty against the redevelopment agency cannot stand. We therefore reverse and remand to the district court with instructions to grant the petition for judicial review.

## I.
### A.

The City of Sparks and the Sparks Redevelopment Agency (RDA) agreed to convey city-owned property with an aging four-story public parking garage on it to a developer. The developer wanted to renovate the garage and construct high-density apartments on the property. Originally, the developer proposed paying cash for the property equal to its fair market value. But the City and the RDA did not want to lose public parking in the downtown redevelopment area, so they rejected the proposal. Eventually, the parties arrived at an alternative proposal—the developer would at its sole cost provide and maintain free public parking on the first floor of the garage for at least 50 years in exchange for the property.

This transaction implicated NRS Chapter 279, which contains statutes pertaining to community redevelopment agencies like the Sparks RDA. NRS 279.500 provides that the prevailing-wage provisions in NRS 338.013 to 338.090 apply to certain redevelopment projects. Pertinent here, NRS 279.500(2) states that if a redevelopment agency "(a) [p]rovides property for development at less than the fair market value of the property; . . . or (c) [p]rovides financial incentives to a developer with a value of more than \$100,000," the agency must, "regardless of whether the project is publicly or privately owned, . . . provide in . . . the agreement with

the developer . . . that the development project is subject to the [prevailing-wage] provisions of NRS 338.013 to 338.090."

Before agreeing on terms, the RDA and the City commissioned a professional appraisal of the property. The RDA sought to establish the property's fair market value, so it would know whether it needed to require the developer to pay prevailing wages on the project under NRS 279.500(2). A certified Member of the Appraisal Institute (MAI) appraiser priced the property at a fair market value of $950,000. That appraiser also undertook to determine the value of the obligation to provide free public parking on the first floor of the garage. He estimated that the ground floor would accommodate 100 parking spaces, with a rental value of approximately $60,000 per year. A second MAI appraiser reviewed the first appraiser's work and agreed with it. After review, the RDA determined that the first floor of the parking garage would support 90 parking spaces, with some additional motorcycle parking, yielding a value of $54,000 per year. Using a three-percent discount rate, the present value of the $54,000 annual benefit of the parking spaces over 50 years was $1.4 million—or $980,000 using a five-percent discount rate—more than the property's fair market value of $950,000.

The RDA and the developer entered into a Disposition and Development Agreement (DDA). Based on the appraisals, the RDA concluded that the value of the public parking covenant equaled or exceeded the property's fair market value. Because this took the transaction outside NRS 279.500(2), the DDA included a clause stating that the developer did not have to pay prevailing wages on the project. In the DDA, the developer agreed to a deed restriction obligating it or its successor to provide 90-100 free public parking spaces on the ground floor of the parking garage at their

sole expense for a period of 50 years. After two publicly noticed meetings, the Sparks City Council and the RDA approved the DDA.

B.

When work began on the project, the developer did not pay prevailing wages. This prompted respondent Laborers' International Union of North America, Local 169 to file a complaint against the RDA with the Office of the Labor Commissioner. The complaint alleged that the RDA violated NRS 279.500(2)(a) when it sold the property for less than its fair market value without requiring the developer to pay prevailing wages for work on the project. In its prehearing statement but without amending its complaint, Local 169 expanded its claims to allege that, by conveying the property to the developer for less than its fair market value, the RDA not only triggered NRS 279.500(2)(a) but also provided a financial incentive worth more than $100,000, triggering NRS 279.500(2)(c) as well.

The Labor Commissioner conducted an evidentiary hearing on Local 169's complaint. At the hearing, the appraisers' reports were admitted without objection and a representative from the City of Sparks and Local 169 each testified. Local 169 presented no expert appraisal evidence of its own. The Sparks representative testified to the negotiations that led to the DDA, including that the developer proposed to pay cash and it was the RDA that initiated the public parking trade.

The Labor Commissioner resolved the case by written decision. As amended on reconsideration, the decision acknowledges that the appraisals established that the property's fair market value was $950,000 and that, spread out over 50 years, the present value of the agreement to provide 90+ free public parking spaces could equal or exceed that sum. The Labor Commissioner thus did not find that the RDA transferred the property for less than its fair market value, such that NRS 279.500(2)(a)

applied. Instead, because the developer acquired the property for "future compensation," not cash or money up front, the Labor Commissioner concluded that the RDA provided the developer a financial incentive worth more than $100,000, so NRS 279.500(2)(c) applied.

In her decision, the Labor Commissioner found that the developer preferred to pay cash for the property, that the idea of a 50-year public parking exchange originated with the RDA, and that the RDA did not intend to create a financial incentive by structuring the transaction as it did. The decision nonetheless concluded that the RDA "provided a financial incentive to [the developer] worth more than $100,000 (NRS 279.500 subdivision 2(c)) because [the RDA] did not require [the developer] to pay any money/cash" for the property. "Future compensation," the decision stated, "does not meet the intent or language of NRS 279.500(2)." Because the RDA did not include a clause in the DDA requiring the developer to pay prevailing wages for work done on the first floor of the parking garage, the decision assessed a $5,000 penalty against the RDA for investigative costs. It also stated that the Office of Labor Commissioner "will evaluate any potential wage claims/complaints that may be filed involving work on the first-floor parking garage."

The RDA filed a petition for judicial review. The district court upheld the Labor Commissioner's decision, except that it remanded for findings to support the administrative penalty calculation. The RDA timely appealed. The district court's remand as to the penalty calculation does not affect the finality of its decision, so this court has jurisdiction over this appeal. *See Bally's Grand Hotel & Casino v. Reeves*, 112 Nev. 1487, 1488-89, 929 P.2d 936, 937 (1996) (holding that where a remand to an agency for calculation of benefits due does not require further substantive action or change the decision that benefits are owed, the district court's decision on the petition for judicial review is final and appealable).

II.

A.

This court applies the same standards as the district court in resolving a petition for judicial review of an administrative agency's decision in a contested case. *Bombardier Transp. (Holdings) USA, Inc. v. Nev. Labor Comm'r*, 135 Nev. 15, 18, 433 P.3d 248, 252 (2019); *see* NRS 233B.135(3). The agency's factual findings are reviewed deferentially "for clear error or an abuse of discretion" and will not be overturned if "supported by substantial evidence." *Dep't of Bus. & Indus. v. TitleMax of Nev., Inc.*, 135 Nev. 336, 340, 449 P.3d 835, 839 (2019) (citing NRS 233B.135(3)(e), (f)). However, "[a] de novo standard of review is applied when [a reviewing] court addresses a question of law, including the administrative construction of statutes." *Elizondo v. Hood Mach., Inc.*, 129 Nev. 780, 784, 312 P.3d 479, 482 (2013) (internal quotation omitted); *accord Bombardier*, 135 Nev. at 18, 433 P.3d at 252 (stating that "[w]e . . . review de novo statutory interpretation questions in the administrative context"); *City of North Las Vegas v. Warburton*, 127 Nev. 682, 686, 262 P.3d 715, 718 (2011) ("Like the district court, we review an administrative appeals officer's determination of questions of law, including statutory interpretation, de novo."); *see* NRS 233B.135(3)(a), (b), (d). Some cases recognize an exception to this general rule, saying deference is appropriate when the agency's interpretation is "within the language of the statute," *Taylor v. State, Dep't of Health & Hum. Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013) (internal quotation omitted), or "reasonably consistent with the language" of a statute that the agency is "charged with administering," *TitleMax of Nev.*, 135 Nev. at 340, 449 P.3d at 839. But this exception is limited and does not apply when the agency's interpretation falls outside the statute's plain text. *See United States v. State Eng'r*, 117 Nev. 585, 589-

 

90, 27 P.3d 51, 53 (2001) (stating that courts do not defer to an agency's interpretation of a statute when "an alternative reading is compelled by the plain language of the provision").

## B.

The RDA raises a threshold challenge to the Labor Commissioner's jurisdiction. It argues that the Commissioner has neither the expertise nor the statutory authority to address a dispute arising under NRS Chapter 279 over the valuation of interests in real property. But NRS 607.160(1)(a) requires the Labor Commissioner to "enforce all labor laws of the State of Nevada," unless enforcement is "specifically and exclusively vested" in some other officer, board, or commission. Although codified as part of NRS Chapter 279, Nevada's Community Redevelopment Law, NRS 279.500(2) provides that the prevailing-wage provisions in NRS 338.013 to 338.090 apply "to the same extent as if the agency had awarded the contract for the project" if a redevelopment agency transfers property to a developer for less than its fair market value or provides financial incentives to a developer worth more than $100,000. NRS 338.015(1) vests authority to enforce NRS 338.013 to 338.090 in the Labor Commissioner.

When a statute incorporates the prevailing-wage provisions, the Labor Commissioner has jurisdiction to enforce those provisions. *See City of Reno v. Bldg. & Constr. Trades Council of N. Nev.*, 127 Nev. 114, 121, 251 P.3d 718, 722-23 (2011). By its plain terms, NRS 279.500(2) incorporates the prevailing-wage provisions in NRS 338.013 to 338.090, and the RDA does not establish that enforcement is "specifically and exclusively" vested in some other officer, board, or commission, *see* NRS 607.160(1)(a). Therefore, the Labor Commissioner had authority and jurisdiction to enforce NRS 279.500(2), including the obligation it imposes on a redevelopment agency to require a developer to pay prevailing wages

in specified circumstances. *Cf. City of Henderson v. Kilgore*, 122 Nev. 331, 334, 131 P.3d 11, 13 (2006) (explaining that while the agency's powers are limited to those set by statute, "certain powers may be implied even though they were not expressly granted by statute, when those powers are necessary to the agency's performance of its enumerated duties").

## C.

This brings us to the Labor Commissioner's interpretation of NRS 279.500(2)(c). In her decision, the Labor Commissioner found that the DDA involved "future compensation" because it did not require the developer to pay cash up front for the property. As stated in the decision, "the question then becomes, did the 'future compensation' satisfy the intent of NRS 279.500, or does it create a potential loan and/or financial incentive because the terms of the DDA spread the future compensation/contractual rights/deed over 50-years[?]" Without analyzing the text of the statute or finding it ambiguous, the decision concludes that it would violate the "intent" of NRS 279.500(2)(c) to allow a developer to acquire property for "future compensation" as opposed to cash without requiring the developer to pay prevailing wages for work on the project.

The Labor Commissioner's interpretation of NRS 279.500(2)(c) impermissibly broadens its reach. The plain text of NRS 279.500(2)(c) states that if a redevelopment agency provides "financial incentives" to a developer worth more than $100,000, then its prevailing-wage provisions apply. The statute says nothing about "future compensation." Nor does it state that a redevelopment agency must include prevailing-wage language in a DDA if it sells a parcel of property for anything besides cash on the barrelhead. *Cf. Williams v. Bd. of Educ. of E. Otero Sch. Dist. R-1*, 749 P.2d 472, 474 (Colo. App. 1987) (reasoning that because a state statute did not

require sale of school district property for cash only, "non-cash consideration" did not automatically invalidate the sale).

The Office of the Labor Commissioner and Local 169 do not argue that their interpretation of NRS 279.500(2)(c) fits within the statute's plain text. Instead, they defend their interpretation as consistent with the statute's "intent," citing legislative history and with Local 169 arguing that it would be "virtually impossible" for NRS 279.500(2) to list every situation to which it applies. But, absent ambiguity, a statute's plain text controls its interpretation. *Home Warranty Adm'r of Nev., Inc. v. State, Dep't of Bus. & Indus.*, 137 Nev. 43, 45, 481 P.3d 1242, 1246 (2021). Under our caselaw, "where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction" or gap filling by the agency. *State, Loc. Gov't Emp.-Mgmt. Rels. Bd. v. Educ. Support Emps. Ass'n*, 134 Nev. 716, 721, 429 P.3d 658, 662-63 (2018) (internal quotation omitted).

The Labor Commissioner's interpretation of NRS 279.500(2)(c) equates "financial incentive" with "future compensation." This equation effectively expands NRS 279.500(2)(c) to say that its prevailing-wage provisions apply any time a redevelopment agency transfers property to a developer for non-cash consideration. But under well-established principles of contract law, legally enforceable promises to perform services in the future, or "future consideration," is valid and does not automatically equate to a "financial incentive." *See Cain v. Price*, 134 Nev. 193, 195, 415 P.3d 25, 28 (2018) ("Consideration is the exchange of a promise or performance, bargained for by the parties.") (quoting *Jones v. SunTrust Mortg., Inc.*, 128 Nev. 188, 191, 274 P.3d 762, 764 (2012)). Looking beyond the statute's language and interpreting "financial incentive" to mean "future compensation" in the form of non-cash consideration was error. Because

SUPREME COURT
OF
NEVADA

(O) 1947A

10

this interpretation of NRS 279.500(2)(c) does not fall within the language of the statute, we do not defer to it. *Home Warranty*, 137 Nev. at 45, 481 P.3d at 1246.

The Labor Commissioner's conclusion that the acceptance of non-cash consideration automatically creates a "financial incentive" also conflicts with the ordinary meaning of that phrase, as the facts of this case illustrate. NRS 279.500(2)(c) does not define the phrase "financial incentive." The RDA proffers a definition for financial incentive—it is "[a] benefit given to customers or companies to get them to do something they normally wouldn't. It is money offered to get them to try something new offered. The event might not have happened without the incentive." *Financial Incentive, The Law Dictionary*, http://thelawdictionary.org/ financial-incentive (formerly *Black's Law Dictionary* (online version) 2d ed). Although the record shows the Labor Commissioner initially used this definition, the amended final decision neither cites this definition, nor offers any other. Rather, it deemed that the legislature intended "financial incentive" to include the acceptance by a redevelopment agency of non-cash consideration for a property transfer and concluded that because the agreement between the RDA and the developer allowed for future compensation rather than requiring cash or money, NRS 279.500(2)(c) applied. But the evidence established that the developer preferred a cash transaction, indicating that the RDA's acceptance of non-cash consideration did not operate as a financial incentive to the developer—if anything, it was a disincentive. Transferring property in exchange for future services does not, without more, automatically provide a "financial incentive."

This is not to say that the legislature could not enact a statute providing that an agreement allowing for consideration other than money or cash must always include a provision for the payment of prevailing

SUPREME COURT
OF
NEVADA

(O) 1947A

wages. But our task is not to determine what the legislature could have done. It is to determine what the legislature did. *Cf. Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 ("The question, however, is not what Congress 'would have wanted' but what Congress enacted . . . ."). And under NRS 279.500(2)(c), the legislature provided that a financial incentive from an agency to a developer valued over $100,000 requires the payment of prevailing wages—not that any form of consideration other than cash or money up front requires the payment of prevailing wages.

D.

Accepting arguendo that the RDA's transfer of the property in exchange for future public parking rights could create a "financial incentive," substantial evidence does not support that such an incentive existed in this case, where the developer preferred to pay cash, or that if it did, its value exceeded $100,000. *See City of Reno v. Reno Police Protective Ass'n*, 118 Nev. 889, 899, 59 P.3d 1212, 1219 (recognizing that "[i]f the agency's decision lacks substantial evidentiary support, the decision is unsustainable"); *see also Elizondo*, 129 Nev. at 784, 312 P.3d at 482 (defining substantial evidence as "evidence adequate to support the agency's conclusion"). We recognize that the Labor Commissioner concluded that using a 50-year analysis to "support an amount equal to or above the appraised amount" of the property was not "reasonable." But the Labor Commissioner also concluded that the agreement to provide public parking for 50 years was "legally recorded and enforceable," recognized that the appraisers valued the public parking over 50 years as equal to or greater than the appraised value of the property, and found that the developer did not seek out the public parking obligation but preferred to acquire the property for cash. And, of note, the final decision made no finding that the RDA conveyed the property to the developer at less than fair market value

SUPREME COURT
OF
NEVADA

(O) 1947A

12

or that the appraisals and reports of the property's fair market value or the value of the public parking were unreliable or inaccurate. On this record and given these findings, we conclude that the Labor Commissioner's decision that the RDA provided a financial incentive exceeding $100,000 to the developer lacks substantial evidence and must be reversed.

### III.

The Labor Commissioner correctly concluded that she had jurisdiction to decide whether the prevailing-wage provisions apply under NRS 279.500. But the plain language of NRS 279.500 did not require the application of the prevailing-wage provisions to this agreement between the RDA and the developer. It was error to conclude that the RDA created a financial incentive to the developer worth more than $100,000 and to assess the administrative penalty. Accordingly, we reverse and remand to the district court with instructions to grant the RDA's petition for judicial review.

_____, J.
Pickering

We concur:

_____, C.J.
Cadish

_____, J.
Bell

