140 Nev., Advance Opinion 80

# IN THE SUPREME COURT OF THE STATE OF NEVADA

PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF NEVADA,
Appellant,
vs.
LAS VEGAS POLICE MANAGERS AND
SUPERVISORS ASSOCIATION; AND
LAS VEGAS PEACE OFFICERS
ASSOCIATION,
Respondents.

No. 86818



FILED

DEC 19 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in an action for declaratory relief regarding contributions to the state pension account based on negotiated holidays. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Affirmed.*

Public Employees' Retirement System of Nevada and Ian E. Carr, Carson City,
for Appellant.

Law Office of Daniel Marks and Adam Levine and Daniel Marks, Las Vegas, for Respondents.

_____

BEFORE THE SUPREME COURT, HERNDON, LEE, and BELL, JJ.

## OPINION

By the Court, BELL, J.:

The Las Vegas Police Managers and Supervisors Association and the Las Vegas Peace Officers Association enjoy the statutory power to negotiate holidays on behalf of their members. Relevant here, the Associations negotiated with law enforcement agencies for additional holidays. Despite the negotiated agreements, the Nevada Public Employees' Retirement System (PERS) refused to collect the increased retirement contribution rates on holiday pay for the additional holidays. The Associations sought and were granted declaratory relief, which PERS now challenges on appeal. We conclude the plain text of NRS 288.150(2)(d) requires PERS to collect additional retirement contributions in line with increased wages earned on the negotiated holidays.

## FACTS AND PROCEDURAL HISTORY

The Associations entered into collective bargaining agreements with the Las Vegas Metropolitan Police Department (Metro) and the City of Las Vegas designating certain dates as holidays in addition to those codified in statute. In the agreement with Metro, the Associations designated Christmas Eve as a paid holiday, and in the agreement with the City of Las Vegas, the Associations designated New Year's Eve and Juneteenth as paid holidays. With the recognition of the additional holidays, the Associations negotiated a holiday pay rate for those days.

PERS is obligated to collect retirement contributions from participating public employers on all regular compensation earned by employees, which includes increased pay on holidays. But here, PERS refused to collect contributions on the additional holiday pay negotiated for Christmas Eve, New Year's Eve, and Juneteenth because the holidays are not included in Nevada's statutory list of holidays.

SUPREME COURT
OF
NEVADA

(O) 1947A

The Associations filed a declaratory relief action to establish PERS's obligation to collect holiday pay contributions as negotiated and to compel PERS to obtain the appropriate contributions. The district court granted summary judgment in favor of the Associations and directed PERS to collect the appropriate employer contributions for holiday pay on Christmas Eve, New Year's Eve, and Juneteenth. PERS appeals the summary judgment.

## DISCUSSION

We are presented with whether NRS 286.025 requires PERS to ensure additional retirement contributions in line with increased wages earned on negotiated holidays. We hold, by plain reading of NRS 288.150(2)(d), PERS is required to provide additional contributions based on the Associations' holiday pay negotiations in the collective bargaining agreements.

This court reviews a grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate when, construing all evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." NRCP 56(a); *see also Wood*, 121 Nev. at 729, 121 P.3d at 1029. Because there were no disputed facts below, this matter presents a purely legal question. Questions of statutory interpretation are also reviewed de novo. *Webb v. Shull*, 128 Nev. 85, 88, 270 P.3d 1266, 1268 (2012).

*The Associations have statutory authority to negotiate holiday pay*

The Associations indisputably have the power to negotiate "[h]olidays." NRS 288.150(2)(d). The question on appeal is the legislature's intended definition of "holiday" in the statutes governing collective bargaining and PERS. *See* NRS 288.150 and NRS 286.025. This is a

question of statutory interpretation. Based on a plain reading of the statutes, we hold PERS is obligated to obtain additional contributions for Juneteenth because it has been a legal holiday since 2021. Additionally, we find the Associations possess statutory authority to negotiate additional holidays for which PERS is obligated to obtain contributions despite not being a party to the actual agreement.

*PERS is obligated to obtain contributions for Juneteenth under its own policy because Juneteenth is a legal holiday*

The parties present an issue regarding whether PERS was required to obtain pension contributions based on holiday pay regarding Juneteenth—PERS argued Juneteenth was not a bona fide legal holiday until the final approval of Assembly Bill 140 on June 8, 2023, and the Associations argue it became a legal holiday by virtue of presidential announcement in 2021.

Juneteenth, celebrated on June 19 each year, became a federally recognized holiday by declaration from United States President Joe Biden in 2021. 5 U.S.C. § 6103(a) (2021). At the following legislative session, the Nevada Legislature codified Juneteenth as a state holiday. 2023 Nev. Stat., ch. 231, § 1, at 1463. The Nevada Legislature also allowed for Juneteenth to be observed on either the preceding Friday or following Monday if the holiday falls on a weekend in a particular year. *Id.*

PERS's Official Policy dictates the internal governing rules for PERS. Official Policy 1.19 provides holiday pay is determined based on NRS 236.015's definition of legal holidays. NRS 236.015(1) states "[t]he following days are declared to be legal holidays" and explicitly lists several named holidays. The statute, however, further identifies as a legal holiday "[a]ny day that may be appointed by the President of the United States for public fast, thanksgiving or as a legal holiday." Thus, Juneteenth became

 

a legal holiday in Nevada in 2021 following the declaration of the President. Nevada's observation of Juneteenth on a Monday or Friday provided for the expanded recognition of the legal holiday beginning in 2023.

PERS argues that Juneteenth should not be recognized as a state holiday prior to 2023 because the federal holiday of Columbus Day is not recognized as a state holiday. This argument is defeated by the plain language of the statute. NRS 236.015(2) provides closure of government offices on legal holidays "unless in the case of appointed holidays all or a part thereof are specifically exempted." While Coumbus Day is still celebrated as a federal holiday, the Nevada Legislature specifically changed Columbus Day from a legal holiday to commemorative status in Nevada when it amended NRS 236.025 in 1989. 1989 Nev. Stat., ch. 236, § 25, at 6010. Given the Nevada Legislature specifically exempted Columbus Day by changing the day to a day of observance rather than a legal holiday, the analogy to Juneteenth fails.

Because PERS is obligated to obtain holiday pay contributions by its own terms for holidays listed in NRS 236.015(1), including Juneteenth, we affirm the district court's order requiring PERS to obtain Juneteenth contributions retroactively.[1] We now turn to the negotiated Christmas Eve and New Year's Eve holidays.

*The Associations have statutory power to negotiate holiday pay for Christmas Eve and New Year's Eve*

With respect to the Christmas Eve and New Year's Eve holidays, PERS argues that because PERS was not a party to the negotiated

---

[1]We find the contributions should be made retroactive to 2022, the year the collective bargaining agreement was reached. Though 2021 is the year Juneteenth became federally recognized as a holiday, 2022 was the year the parties bargained for Juneteenth to be a paid holiday.

collective bargaining agreements, it is not required to obtain additional holiday pay contributions as agreed upon in the agreements. We disagree with PERS and hold the Associations have the statutory power to negotiate holiday pay for Christmas Eve and New Year's Eve per NRS 288.150(1) and (2)(d).

Whether PERS is a party to a collective bargaining agreement or not, the plain text of NRS 286.025 requires that PERS obtain additional contributions on all "holiday[s]." NRS 288.150(2)(d) also gives the Associations the power to negotiate "[h]olidays." Neither statute uses the term "legal holiday," and neither statute requires physical party presence in negotiations.

Somewhat confusingly, the collective bargaining agreements use the term "legal holiday." The parties, of course, do not have the ability to create legal holidays, but do have the ability to negotiate holidays and holiday pay. Cf. NRS 236.015 and NRS 288.150(2)(d). Consequently, the terminology is inconsequential for the purposes of this opinion.

Reading "holiday" in NRS 286.025(2)(b)(1) to mean "legal holiday" would not faithfully interpret the plain text of NRS 286.025. In statutory interpretation cases, this court gives meaning to distinctions in terms within a statute. *See Loughrin v. United States*, 573 U.S. 351, 358 (2014) (noting when the legislature includes "particular language in one section of a statute but omits it in another" (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)), courts should presume the legislature "intended a difference in meaning"); *Clover Valley Land & Stock Co. v. Lamb*, 43 Nev. 375, 380-81, 187 P. 723, 725 (1920) (taking notice of facially different terms within a statute). "Often, such difference in wording is seen as deliberate, signifying a difference in meaning." *Adkins v. Union Pac. R.R. Co.*, 140 Nev., Adv. Op. 48, 554 P.3d 212, 218 (citing *Platte River Ins.*

*Co. v. Jackson*, 137 Nev. 773, 777, 500 P.3d 1257, 1261 (2021) (recognizing the omission of language in one part of the statute which appeared in another part of the statute signified different meanings)).

NRS Chapter 286 makes only one additional reference to holidays, in NRS 286.460, which concerns the remittance of employer contributions and uses the more specific "legal holiday." *See* NRS 286.460(3) ("The 15-day limit is extended 1 working day for each legal holiday that falls within the 15-day period and is officially recognized by the public employer."). NRS 286.460 refers to "legal holiday[s]," and the legislature chose the unmodified "holiday" both in NRS 286.025(2)(b)(1) and in NRS 288.150(2)(d).

We find "holiday" as used in both NRS 286.025 and NRS 286.150 is not limited to statutory holidays; doing otherwise would result in the court ignoring the plain distinction of the word "legal" as used in NRS 286.460. As a result, Christmas Eve and New Year's Eve, as negotiated by the Associations, are holidays for which PERS has a statutory obligation to collect additional contributions, regardless of whether PERS was a party to the agreement.

*PERS's constitutional authority to govern is not infringed by the Associations' power to negotiate holidays*

PERS additionally argues its board has the authority to determine what qualifies as PERS-eligible compensation under its authority through its Official Policy 1.19. *See* Nev. Const. art. 9 § 2, cl. 4 ("The public employees' retirement system must be governed by a public employees' retirement board."). Despite PERS's indisputable obligation to administer the system, such a broad interpretation of PERS's authority would threaten legally permissible collective bargaining generally. *See generally City of Sparks v. Sparks Mun. Ct.*, 129 Nev. 348, 362-63, 302 P.3d

1118, 1128-29 (2013) (discussing overlapping constitutional powers and conducting a fact-intensive analysis to determine if the city's assumption of power infringed on the municipal court's constitutional powers). PERS's constitutional obligation to govern the retirement system provides no basis to prohibit the Associations from bargaining for holidays. *See* NRS 288.150(2)(d); *We the People Nev. ex rel. Angle v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008) ("[W]hen possible, the interpretation of a statute or constitutional provision will be harmonized with other statutes or provisions to avoid unreasonable or absurd results.").

Here, the Associations are permitted by statute to negotiate marginal increases in PERS-eligible holiday pay. If PERS—and only PERS—were able to determine which paid holidays can be included in said negotiations, it would render the statute meaningless. Official Policy 1.19 references PERS's authority to determine which holidays qualify for additional paid leave, but that authority must work seamlessly with applicable statutes, and PERS cannot create regulations in conflict with statutes. In this case, the Associations and law enforcement agencies entered into collective bargaining agreements, and thus, the Associations also have a voice in determining which holidays qualify for additional pay. We reject PERS's argument that its constitutional obligation prohibits the Associations from bargaining for holidays.

*PERS's claim for immunity from the collective bargaining agreements is facially meritless*

PERS, claiming it has authority to regulate what is PERS-eligible compensation, and that it is the only entity with statutory authority to define "holiday," argues it is immune from any requirement to apply an agreement to which it was not a party. PERS also argues it is not required to apply legally deficient collective bargaining agreements. We conclude

SUPREME COURT
OF
NEVADA

(O) 1947A

8

these claims from PERS lack merit because PERS is statutorily obligated to govern the retirement system and cannot escape that liability merely by not being present in negotiations or not being a party to a collective bargaining agreement.

PERS provides no distinction between the enforceability of the holiday provisions and any other clearly negotiable provisions PERS is bound to apply in its administration of the system, such as pay rate differences for employees working regular hours compared to employees working graveyard shifts.

Though it concerned distinct facts, we find our decision in *State, Department of Transportation v. Public Employees' Retirement System of Nevada* to be instructive here. 120 Nev. 19, 23, 83 P.3d 815, 817 (2004). In *Department of Transportation*, PERS sued an employer for contributions for archaeologists. *Id.* at 21, 83 P.3d at 816. While the employer did not consider archaeologists to be employees and had not enrolled them in PERS, this court found PERS has a statutory duty to manage the retirement system. *Id.* at 22, 83 P.3d at 817. We find that here, like in *Department of Transportation*, PERS has an obligation to govern the system according to the statutory scheme. As a result, PERS has the duty to seek contributions from public employers on behalf of employees.

Whether or not PERS enjoys deference to interpret NRS 286.025 according to its own policy, PERS cannot escape responsibility here merely because it was not a party to the collective bargaining agreements. PERS has an obligation to govern the retirement system according to state law, and the Associations levy a statutory claim. *See Pub. Emps.' Ret. Sys. of Nev. v. Gitter*, 133 Nev. 126, 133, 393 P.3d 673, 680 (2017) (requiring PERS to adhere to statutory language contained in other statutes and noting "PERS's obligation to pay . . . is statutory, not contractual"). No

SUPREME COURT
OF
NEVADA

(O) 1947A

9

analogous power to determine "holidays" exists in NRS Chapter 286; in fact, the legislature expressly gave the power to determine "holidays" to the Associations through their collective bargaining power. NRS 288.150(2)(d). PERS must effectuate the statute, including its mandate to obtain contributions for "work performed on a holiday." NRS 286.025(2)(b)(1).

*The Associations' power to negotiate holidays would not violate the Internal Revenue Service Tax Code*

In addition to claiming it is not legally required to recognize the holidays negotiated outside of the NRS, PERS argues allowing the Associations to negotiate additional holidays would violate the Internal Revenue Code's definitely determinable benefit rule. We disagree. Here, the collective bargaining agreement's terms identify a stipulated formula that is not subject to the employer's discretion.

A definitely determinable benefit is one that (1) can be computed "in accordance with a stipulated formula" contained in the plan and (2) "is not subject to the discretion of the employer." Rev. Rul. 74-385, 1974-2 C.B. 130. The PERS benefit formula is codified in NRS 286.551. The Internal Revenue Service also states "[a]s long as the plan terms identify a 'stipulated formula' that is not subject to the employer's discretion, the benefits are definitely determinable." IRS, *Issue Snapshot—Definitely Determinable Benefits* (Aug. 19, 2024), https://www.irs.gov/retirement-plans/definitely-determinable-benefits.

We find the benefits agreed to in the collective bargaining agreements in this case are definitely determinable under the two-part test above. First, in Article 12, Section 1 of the agreements, the Associations designate an express formula for determining holiday pay. Second, this section is not subject to the discretion of the employer—the collective bargaining agreements govern until the next agreement is collectively

bargained for. That is, once it is signed, the agreement cannot be changed until the parties make another agreement. Once made, the collective bargaining agreements, and subsequently the benefit formula, were not subject to employer discretion. Accordingly, we find the benefits here are definitely determinable, and this matter does not violate the Internal Revenue Code.

## *CONCLUSION*

The Associations have the power to negotiate holidays, and PERS is required to collect employer contributions for the additional holiday pay rate. As a result, we affirm the district court's grant of summary judgment.

_____, J.
Bell

We concur:

_____, J.
Herndon

_____, J.
Lee