141 Nev., Advance Opinion 55

IN THE SUPREME COURT OF THE STATE OF NEVADA

PUBLIC EMPLOYEES' RETIREMENT
SYSTEM OF NEVADA,
Appellant,
vs.
LAS VEGAS POLICE MANAGERS AND
SUPERVISORS ASSOCIATION; AND
LAS VEGAS PEACE OFFICERS
ASSOCIATION,
Respondents.

No. 86818



FILED

NOV 13 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting summary judgment in an action for declaratory relief regarding contributions to the state pension account based on negotiated holidays. Eighth Judicial District Court, Clark County; Mark R. Denton, Judge.

*Affirmed.*

Public Employees' Retirement System of Nevada and Ian E. Carr, Carson City,
for Appellant.

Law Office of Daniel Marks and Adam Levine and Daniel Marks, Las Vegas,
for Respondents.

_____

BEFORE THE SUPREME COURT, EN BANC.

25-49568

## OPINION

By the Court, BELL, J.:

The Las Vegas Police Managers and Supervisors Association and the Las Vegas Peace Officers Association enjoy the statutory power to negotiate holidays on behalf of their members. Relevant here, the Associations negotiated with law enforcement agencies for additional holidays. Despite the negotiated agreements, the Nevada Public Employees' Retirement System (PERS) refused to collect the increased retirement contribution rates on holiday pay for the additional holidays. The Associations sought and were granted declaratory relief, which PERS now challenges on appeal. We conclude the plain text of NRS 288.150(2)(d) requires PERS to collect additional retirement contributions in line with increased wages earned on the negotiated holidays.

## FACTS AND PROCEDURAL HISTORY

The Associations entered into collective bargaining agreements with the Las Vegas Metropolitan Police Department (Metro) and the City of Las Vegas designating certain dates as holidays in addition to those codified in statute. In the agreement with Metro, the Associations designated Christmas Eve as a paid holiday, and in the agreement with the City of Las Vegas, the Associations designated New Year's Eve and Juneteenth as paid holidays. With the recognition of the additional holidays, the Associations negotiated a holiday pay rate for those days.

PERS is obligated to collect retirement contributions from participating public employers on all regular compensation earned by employees, which includes increased pay on holidays. But here, PERS refused to collect contributions on the additional holiday pay negotiated for

SUPREME COURT
OF
NEVADA

(O) 1947A

Christmas Eve, New Year's Eve, and Juneteenth because the holidays are not included in Nevada's statutory list of holidays.

The Associations filed a declaratory relief action to establish PERS's obligation to collect contributions on negotiated holiday pay and to compel PERS to obtain the appropriate contributions. The district court granted summary judgment in favor of the Associations and directed PERS to collect the appropriate employer contributions for holiday pay on Christmas Eve, New Year's Eve, and Juneteenth. PERS appeals the summary judgment.[1]

## DISCUSSION

We are presented with whether NRS 286.025 requires PERS to ensure additional retirement contributions in line with increased wages earned on negotiated holidays. We hold, by the plain reading of NRS 288.150(2)(d), PERS is required to provide additional contributions based on the Associations' holiday pay negotiations in the collective bargaining agreements.

This court reviews a grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate when, construing all evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1]Having considered the petition for en banc reconsideration and response in this matter, we have determined that reconsideration is warranted. *See* NRAP 40A(a). Accordingly, the petition for en banc reconsideration is granted. This court's previous opinion in this matter, *Public Employees' Retirement System of Nevada v. Las Vegas Police Managers and Supervisors Association*, 140 Nev., Adv. Op. 80, 561 P.3d 29 (2024), is withdrawn and this opinion is issued in its place.

NRCP 56(a); *see also Wood*, 121 Nev. at 729, 121 P.3d at 1029. Because there were no disputed facts below, this matter presents a purely legal question of statutory interpretation, which is also reviewed de novo. *City of Henderson v. Wolfgram*, 137 Nev. 755, 756, 501 P.3d 422, 424 (2021).

*The Associations have statutory authority to negotiate holiday pay*

The Associations indisputably have the power to negotiate "[h]olidays." NRS 288.150(2)(d). The question on appeal is the legislature's intended definition of "holiday" in the statutes governing collective bargaining and PERS. *See* NRS 288.150; NRS 286.025. Based on a plain reading of the statutes, we conclude PERS is obligated to obtain additional contributions for Juneteenth because it has been a legal holiday since 2021. Additionally, we conclude the Associations possess statutory authority to negotiate additional holidays for which PERS is obligated to obtain contributions despite not being a party to the actual agreement.

*PERS is obligated to obtain contributions for Juneteenth under its own policy because Juneteenth is a legal holiday*

The parties present an issue regarding whether PERS was required to obtain pension contributions based on holiday pay regarding Juneteenth—PERS argued Juneteenth was not a bona fide legal holiday until the final approval of Assembly Bill 140 on June 8, 2023, and the Associations argue it became a legal holiday by virtue of presidential announcement in 2021. We agree with the Associations.

A legal federal holiday can only be created through Congress:

> It is not within the power of the President, however, to make by such proclamation, without the authority of Congress, a legal holiday of the day so designated. Such holidays, in so far as they allow the employees of the Government leave of absence with pay, are always established by act of Congress or joint resolution.

*Shrine Parade—Authority of President to Close Government Departments*, 33 Op. Att'ys Gen. 485, 486 (1924) (cleaned up). Neither Congress nor the President has the ability to declare a national holiday that is binding on the states, as each state individually determines its own legal holidays. Jacob R. Straus, Cong. Rsch. Serv., R41990, Federal Holidays: Evolution and Current Practices (2021). Nevada statutes define state legal holidays in NRS 236.015(1). The statute explicitly lists several holidays but also identifies as a legal holiday "[a]ny day that may be appointed by the President of the United States for public fast, thanksgiving or as a legal holiday." Juneteenth, celebrated on June 19 each year, became the eleventh federally recognized holiday in 2021. In June 2021, Congress passed an amendment to 5 U.S.C. § 6103(a) adding "Juneteenth National Independence Day, June 19" as a "legal public holiday." The law became effective on June 17, 2021, when signed into law by the President of the United States. Juneteenth National Independence Day Act, Pub L. No. 117-17, § 6103, 135 Stat. 287 (2021). Additionally, the President issued a proclamation on June 18, 2021, which includes language that "[i]n its celebration of freedom, Juneteenth is a day that should be recognized by all Americans. And that is why I am proud to have consecrated Juneteenth as our newest national holiday." Juneteenth Day of Observance, Pres. Proc. No. 10229, 86 Fed. Reg. 32717 (June 18, 2021).

At its next legislative session, the Nevada Legislature codified Juneteenth as a state holiday. 2023 Nev. Stat., ch. 231, § 1, at 1463. The Nevada Legislature also provided that Juneteenth would be observed on either the preceding Friday or following Monday if the holiday falls on a weekend in a particular year. *Id.*

SUPREME COURT OF NEVADA

(O) 1947A

The question before us involves whether Juneteenth was a state holiday prior to the 2023 state legislative action. Interpreting near-identical statutory language, the California Supreme Court determined that "appointment" of a holiday by a President required, initially, a declaration of a corresponding federal holiday. *Cal. Sch. Emps. Ass'n v. Governing Bd.*, 878 P.2d 1321, 1328 (Cal. 1994). The court reasoned that this threshold requirement distinguishes ceremonial proclamations from those intended to designate a national holiday and also avoids a situation where state workers, but not federal workers, might receive a day off based on a proclamation from the President. *Id.* The court also concluded that even when a corresponding federal holiday has been created, "[t]he intent to designate a national holiday must also be apparent in the language of the proclamation, executive order, or other official announcement." *Id.*

We agree with the California court's narrow interpretation of this statutory provision regarding the President appointing a legal holiday. The provision of NRS 236.015(1) that allows a state legal holiday to be established through appointment by the President of the United States contemplates a corresponding holiday for federal employees. Reading the statute even more narrowly, as PERS suggests, would render the language meaningless—if the language does not cover the express creation of a national holiday, it is hard to imagine what it would cover. Viewing NRS 236.015 in this light, the Juneteenth holiday became a state holiday when the national holiday was created and signed into law by the President, and when the intention to designate the day as a national holiday was further expressed in the proclamation issued by the President.

PERS argues that Juneteenth should not be recognized as a state holiday prior to 2023 because the federal holiday of Columbus Day is not recognized as a state holiday. This argument is defeated by the plain language of the statute. NRS 236.015(2) provides closure of government offices on legal holidays "unless in the case of appointed holidays all or a part thereof are specifically exempted." While Columbus Day is still celebrated as a federal holiday, the Nevada Legislature specifically changed Columbus Day from a legal holiday to commemorative status in 1989 when it amended NRS 236.025. 1989 Nev. Stat., ch. 236, § 1, at 684. Given that the Nevada Legislature specifically exempted Columbus Day by changing the day to a day of observance rather than a legal holiday, the analogy to Juneteenth fails.

PERS's Official Policy dictates the internal governing rules for PERS. Official Policy 1.19 provides holiday pay is determined based on NRS 236.015's definition of legal holidays. Accordingly, by its own policy, Juneteenth became a legal holiday in Nevada in 2021 following the declaration of the President. Nevada's observation of Juneteenth on a Monday or Friday provided for the expanded recognition of the legal holiday beginning in 2023.

Because PERS is obligated to obtain holiday pay contributions by its own terms for holidays listed in NRS 236.015(1), including Juneteenth, we affirm the district court's order requiring PERS to obtain Juneteenth contributions retroactively to 2022, the year the collective bargaining agreement was reached, as that was the issue before the district court. We now turn to the negotiated Christmas Eve and New Year's Eve holidays.

*The Associations have statutory power to negotiate holiday pay for Christmas Eve and New Year's Eve*

With respect to the Christmas Eve and New Year's Eve holidays, PERS argues that, because PERS was not a party to the negotiated collective bargaining agreements, it is not required to obtain additional holiday pay contributions as agreed upon in the collective bargaining agreements. We disagree with PERS and hold the Associations have the statutory power to negotiate holiday pay for Christmas Eve and New Year's Eve per NRS 288.150(1) and (2)(d).

Compensation for the purpose of PERS retirement contributions is defined as base pay, plus additional payment for "longevity, shift differential, hazardous duty, work performed on a holiday if it does not exceed the working hours of the normal workweek or pay period for that employee, [and] holding oneself ready for duty" under certain circumstances. NRS 286.025(2)(a), (b)(1). Compensation for the purpose of PERS only includes those items specified in the statute. *Id.*

The mandatory subjects of collective bargaining include "salary or wage rates or other forms of direct monetary compensation" and "holidays." NRS 288.150(2)(a), (d). Whether PERS is a party to a collective bargaining agreement or not, the plain text of NRS 286.025(2)(b)(1) includes holiday pay as compensation. NRS 288.150(2)(d) also gives the Associations the power to negotiate "[h]olidays." Neither statute uses the term "legal holiday," and neither statute suggests PERS has a role in negotiating amounts of compensation.

Somewhat confusingly, the collective bargaining agreements use the term "legal holiday." The parties, of course, do not have the authority to create legal holidays, but they are authorized by statute to negotiate holidays and holiday pay. *Cf.* NRS 236.015 and NRS

SUPREME COURT
OF
NEVADA

(0) 1947A

288.150(2)(d). Consequently, we conclude that the terminology is inconsequential for the purposes of this opinion.

Reading "holiday" in NRS 286.025(2)(b)(1) to mean "legal holiday" would not faithfully interpret the plain text of NRS 286.025. The United States Supreme Court has noted that when the legislature includes "particular language in one section of a statute but omits it in another," courts should presume the legislature "intended a difference in meaning." *Loughrin v. United States*, 573 U.S. 351, 358 (2014) (quoting, in the first phrase, *Russello v. United States*, 464 U.S. 16, 23 (1983)). This court gives meaning to distinctions in terms within a statute. *Clover Valley Land & Stock Co. v. Lamb*, 43 Nev. 375, 380-81, 187 P. 723, 725 (1920) (taking notice of facially different terms within a statute). We have stated that, "[o]ften, such difference in wording is seen as deliberate, signifying a difference in meaning." *Adkins v. Union Pac. R.R. Co.*, 140 Nev., Adv. Op. 48, 554 P.3d 212, 218 (2024) (citing *Platte River Ins. Co. v. Jackson*, 137 Nev. 773, 777, 500 P.3d 1257, 1261 (2021) (recognizing the omission of language in one part of the statute that appeared in another part of the statute signified different meanings)).

NRS Chapter 286 makes only one additional reference to holidays, in NRS 286.460, which concerns the remittance of employer contributions and uses the more specific "legal holiday." *See* NRS 286.460(3) ("The 15-day limit is extended 1 working day for each legal holiday that falls within the 15-day period and is officially recognized by the public employer."). NRS 286.460 refers to "legal holiday[s]," and the legislature chose the unmodified "holiday" both in NRS 286.025(2)(b)(1) and in NRS 288.150(2)(d).

SUPREME COURT
OF
NEVADA

(O) 1947A

We conclude "holiday" as used in both NRS 286.025 and NRS 288.150 is not limited to statutory holidays; doing otherwise would result in the court ignoring the plain distinction of the word "legal" as used in NRS 286.460. As a result, Christmas Eve and New Year's Eve, as negotiated by the Associations, are holidays for which PERS has a statutory obligation to collect additional contributions, regardless of whether PERS was a party to the agreement.

*PERS's constitutional authority to govern is not infringed by the Associations' power to negotiate holidays*

PERS additionally argues its board has the authority to determine what qualifies as PERS-eligible compensation under its authority through its Official Policy 1.19. *See* Nev. Const. art. 9, § 2(4) ("The public employees' retirement system must be governed by a public employees' retirement board."). Despite PERS's indisputable obligation to administer the system, such a broad interpretation of PERS's authority would threaten legally permissible collective bargaining generally. *See generally City of Sparks v. Sparks Mun. Ct.*, 129 Nev. 348, 362-63, 302 P.3d 1118, 1128-29 (2013) (discussing overlapping constitutional powers and conducting a fact-intensive analysis to determine if the city's assumption of power infringed on the municipal court's constitutional powers). PERS's constitutional obligation to govern the retirement system provides no basis to prohibit the Associations from bargaining for holidays. *See* NRS 288.150(2)(d); *We the People Nev. ex rel. Angle v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008) ("[W]hen possible, the interpretation of a statute or constitutional provision will be harmonized with other statutes or provisions to avoid unreasonable or absurd results.").

PERS's Official Policy defines each term in NRS 286.025. For example, shift differential pay is defined as "additional compensation paid to all eligible employees by a public employer for employment in a shift other than the regular shift not including any payment based, in whole or in part, upon any pay type that does not meet the definition of compensation in NRS 286.025." PERS Official Policy 1.38. With the exception of the term "holiday," the other terms from the statute are similarly defined in the Official Policy, all citing to NRS 286.025. *See* PERS Official Policy 1.7 (call back pay); 1.18 (hazardous duty pay); 1.26 (longevity). Holiday pay, however, is defined as "[c]ompensation for work actually performed during an official holiday as defined by NRS 236.015 which is in addition to the compensation paid to all employees who do not work, providing the total working hours do not exceed the working hours of a normal workweek or pay period." PERS Official Policy 1.19. The definition of compensation under NRS 286.025, however, makes no reference to NRS 236.015 or legal holidays and does not distinguish holiday pay from the other types of compensation allowed in addition to base salary.

This does not mean that collective bargaining controls the PERS Board's management of retirement funds beyond what is defined by statute. To be clear, the Associations could not bargain to require PERS to include overtime within the definition of compensation. Rather, employees may collectively bargain for salary and other forms of direct monetary compensation and holidays. As long as those negotiated terms fall under the definition of compensation in NRS 286.025, PERS is obligated to collect contributions based on an individual employee's compensation.

Official Policy 1.19 references PERS's authority to determine which holidays qualify for additional paid leave, but that authority must work seamlessly with applicable statutes, and PERS cannot create regulations in conflict with statutes. In this case, the Associations and law enforcement agencies entered into collective bargaining agreements for additional holidays, which is a permissible topic of collective bargaining. Holidays are also a statutorily defined category of compensation. Under the collective bargaining agreements in question here, PERS then must collect additional contributions for employees who actually perform work during a holiday, so long as the employee's total working hours do not exceed those of a normal workweek or pay period—no differently than PERS collecting nonovertime additional pay for a person who receives additional compensation for working a graveyard shift. We therefore reject PERS's argument that its constitutional obligation prohibits the Associations from bargaining for holidays.

*PERS's claim for immunity from the collective bargaining agreements is facially meritless*

In addition to PERS claiming authority to regulate what counts as compensation and to define holiday, PERS argues it is immune from any requirement to apply an agreement to which it was not a party. PERS, however, is statutorily obligated to govern the retirement system and cannot escape that responsibility merely by not being present in negotiations or not being a party to a collective bargaining agreement. *Cf. State, Dep't of Transp. v. Pub. Emps.' Ret. Sys. of Nev.*, 120 Nev. 19, 23, 83 P.3d 815, 817 (2004) ("PERS has a duty to manage the retirement system according to the statutes . . . ."). But PERS does not have the authority to tell an employer what compensation to pay for a particular job—within the

statutory definition of compensation; instead, that is a topic left for collective bargaining.

PERS also argues it is not required to apply legally deficient collective bargaining agreements. That issue does not present itself here. Holidays are permissibly the subject of collective bargaining as well as part of the statutory construction of compensation for purposes of PERS. PERS provides no distinction between the enforceability of the holiday provisions and any other clearly negotiable provisions PERS is bound to apply in its administration of the system, such as shift differentials.

PERS cannot escape responsibility here merely because it was not a party to the collective bargaining agreements. PERS has an obligation to govern the retirement system according to state law. *See Pub. Emps.' Ret. Sys. of Nev. v. Gitter*, 133 Nev. 126, 133, 393 P.3d 673, 680 (2017) (requiring PERS to adhere to statutory language contained in other statutes and noting "PERS's obligation to pay . . . is statutory, not contractual"). No analogous power to determine "holiday" exists in NRS Chapter 286; in fact, the legislature expressly gave the power to determine holidays to the Associations through their collective bargaining power. NRS 288.150(2)(d). PERS must effectuate the statute, including its mandate to obtain contributions for "work performed on a holiday." NRS 286.025(2)(b)(1).

*The Associations' power to negotiate holidays would not violate the Internal Revenue Service Tax Code*

In addition to claiming it is not legally required to recognize the holidays negotiated outside of the Nevada Revised Statutes, PERS argues allowing the Associations to negotiate additional holidays would violate the Internal Revenue Code's definitely determinable benefit rule. We disagree. Here, the collective bargaining agreements' terms identify a stipulated formula that is not subject to the employer's discretion.

A definitely determinable benefit is one that (1) can be computed "in accordance with a stipulated formula" contained in the plan and (2) "is not subject to the discretion of the employer." Rev. Rul. 74-385, 1974-2 C.B. 130. The PERS benefit formula is codified in NRS 286.551. The Internal Revenue Service also states "[a]s long as the plan terms identify a 'stipulated formula' that is not subject to the employer's discretion, the benefits are definitely determinable." IRS, *Issue Snapshot—Definitely Determinable Benefits* (September 18, 2025), https://www.irs.gov/retirement-plans/definitely-determinable-benefits.

We conclude the benefits agreed to in the collective bargaining agreements in this case are definitely determinable under the two-part test above. First, in Article 12, Section 1 of the agreements, the Associations designate an express formula for determining holiday pay. Second, this section is not subject to the discretion of the employer—the collective bargaining agreements govern until the next agreement is collectively bargained for. That is, once it is signed, the agreement cannot be changed until the parties make another agreement. Once made, the collective bargaining agreements, and consequently the benefit formula, were not subject to employer discretion. Accordingly, we conclude the benefits here are definitely determinable, and this matter does not violate the Internal Revenue Code.

## CONCLUSION

The Associations have the power to negotiate holidays, and PERS is required to collect employer contributions for the additional

holiday pay rate. As a result, we affirm the district court's grant of summary judgment.

_____, J.
Bell

We concur:

_____, C.J.
Herndon

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Lee

SUPREME COURT
OF
NEVADA

(O) 1947A

STIGLICH, J., with whom PICKERING, J., agrees, dissenting:

While I agree that en banc reconsideration is warranted to resolve the substantial public policy issue presented here, I disagree that the PERS Board must recognize respondents' collectively bargained additional holidays as holidays for purposes of the public employee retirement system and therefore respectfully dissent.

The Nevada Constitution requires that "[t]he public employees' retirement system must be governed by a public employees' retirement board." Nev. Const. art. 9, § 2(4). The system provides retirement, disability, and death benefits for public employees and is funded based on actuarial reserve determinations. NRS 286.110(1). The PERS Board sets rules relating to administering this system. NRS 286.200(1). This court has previously recognized that "[t]he retirement program is based upon actuarial principles and its rules must be strictly enforced to ensure that funds will be available in the future." *O'Hara v. State ex rel. Pub. Emps. Ret. Bd.*, 104 Nev. 642, 644, 764 P.2d 489, 490 (1988). The amount employees contribute is based on their compensation and an actuarial determination depending on which retirement fund members participate in. NRS 286.410(1)-(3). Compensation, in turn, refers to an employee's salary, including base pay and certain additional payment such as pay earned working on a holiday. NRS 286.025(1)-(2).

PERS enacted a policy for holiday pay that looks to Nevada state holidays as defined in NRS 236.015(1). PERS Official Policy 1.19.[1] PERS acted within its authority in setting this policy and has since relied

---

[1]While the disposition discusses PERS Official Policy in some length, its analysis does not support permitting respondents to dictate PERS's management of the public employee retirement system.

SUPREME COURT
OF
NEVADA

(O) 1947A

on the policy in making actuarial decisions about the public employee retirement systems it oversees. The Associations collectively bargained for holiday pay on several days not recognized in NRS 236.015(1). The majority here errs in permitting their agreement as to additional holiday days to compel the PERS Board to recognize them as well.

The court should instead treat the collectively bargained for holidays as irrelevant to PERS's management of the retirement system. The collective bargaining was within the Associations' statutory rights, as they may bargain as to holidays and other employment benefits financial in nature, such as "other forms of direct monetary compensation" or insurance benefits. NRS 288.150(2)(a), (f). Should the Associations negotiate for some other monetary perk in addition to salary, they have the statutory authority to do so, but that negotiated agreement should not bring that amount within the scope of what PERS looks to in determining compensation. Treating the extra pay in this manner would accord with other jurisdictions that have excluded collectively bargained for, nonsalary, financial benefits from the compensation considered in determining pension benefits where the relevant statute looked to salary more narrowly. *E.g.*, *Hay v. City of Highland Park*, 351 N.W.2d 622, 627-28 (Mich. Ct. App. 1984); *Vill. of Hanover Park v. Bd. of Trs. of Vill. of Hanover Park Police Pension Fund*, 184 N.E.3d 413, 431-32 (Ill. App. Ct. 2021); *State ex rel. City of Manitowoc v. Police Pension Bd.*, 203 N.W.2d 74, 77, 78-79 (Wis. 1973). No Nevada statute supports the notion that the outcome of collective bargaining should control the PERS Board's management of the retirement fund systems. To the contrary, that interpretation contravenes the Board's constitutional and statutory mandate to govern the public employee retirement system. Moreover, as PERS correctly observes, the Associations seek an inequitable

outcome. Given that the retirement fund members make contributions at the same actuarially determined rate, allowing the Associations' employees to negotiate for more-generous retirement benefits without contributing a correspondingly larger amount entails that other participants in that retirement fund must subsize those more-generous benefits. The majority thus renders a result that is unjust as well, benefitting one group of employees to the detriment of other public employees in a manner contrary to sound fiscal policy.

For these reasons, I would grant the petition for en banc reconsideration and reverse the district court's decision.

_____, J.
Stiglich

I concur:

_____, J.
Pickering